**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WACOH COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 10-617-PD |
| | ) |
| ANALOG DEVICES, INC., ROBERT | ) |
| BOSCH LLC, KIONIX, INC., VTI | ) |
| TECHNOLOGIES, INC. and INVENSENSE | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF
THEIR MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

*Of Counsel*:
Gianni Cutri
Bradley W. Micsky
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 351-9200
rsmith@mnat.com

*Attorneys for Defendant
VTI Technologies, Inc.*

*Of Counsel*:
Stuart J. Sinder
Mark A. Chapman
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

POTTER ANDERSON & CORROON LLP
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Robert Bosch LLC*

YOUNG CONAWAY STARGATT
& TAYLOR LLP

*Of Counsel*:                              Elena C. Norman (#4780)
Andrew E. Monach                           Pilar G. Kraman (#5199)
Marcelo Guerra                             The Brandywine Building
Morrison & Foerster LLP                    1000 West Street, 17th Floor
425 Market Street                          Wilmington, DE 19801
San Francisco, CA 94105-2482               enorman@ycst.com
(415) 268-7000                             pkraman@ycst.com

                                           *Attorneys for Defendant InvenSense, Inc.*

March 2, 2011

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.    INTRODUCTION .......................................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................................. 2

    A.    Overview ............................................................................................................ 2

    B.    Wacoh ................................................................................................................ 3

    C.    InvenSense ......................................................................................................... 4

    D.    Bosch ................................................................................................................. 5

    E.    VTI .................................................................................................................... 6

III.  ARGUMENT ................................................................................................................ 6

    A.    Legal Standard ................................................................................................... 6

    B.    Private Interest Factors Strongly Favor Transfer to the Northern District of
         California ............................................................................................................ 7

         1.    Northern California Would Be Clearly More Convenient for All
                Parties than the District of Delaware ........................................................ 8

         2.    The Location of Relevant Records In Northern California Strongly
                Favors Transfer ...................................................................................... 10

         3.    The Claims Did Not Arise in Delaware .................................................... 11

         4.    Wacoh's Choice of Forum Deserves Little Weight ................................... 11

    C.    Public Interest Factors Strongly Favor Transfer to the Northern District of
         California .......................................................................................................... 13

         1.    Practical Considerations and Court Congestion Favor Transfer to the
                Northern District of California ................................................................. 14

         2.    The Northern District of California Has a Stronger Interest in This
                Action ..................................................................................................... 14

IV.   CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acuity Brands, Inc. v. Cooper Industries, Inc.*,
   C.A. No. 07-444, 2008 WL 2977464 (D. Del. July 31, 2008) ................................................. 13

*Affymetrix, Inc. v. Synteni, Inc.*,
   28 F. Supp. 2d 192 (D. Del. 2002) ................................................................................. 11, 13

*APV North America, Inc. v. Sig Simonazzi North America, Inc.*,
   295 F. Supp. 2d 393 (D. Del. 2002) ...................................................................................... 12

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) ............................................................................................................... 15

*Illumina, Inc. v. Complete Genomics*,
   C.A. No. 10-649, 2010 WL 4818083 (D. Del. Nov. 9, 2010) ........................................ passim

*In re Hoffman-La Roche*,
   587 F.3d 1333 (Fed. Cir. 2009) ............................................................................................ 14

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ..................................................................................... 10, 14

*Jumara v. State Farm Insurance Co.*,
   55 F.3d 873 (3d Cir. 1995) ..................................................................................................... 6

*Mekiki Co. Ltd. v. Facebook Inc.*,
   C.A. No. 09-745, 2010 WL 2348740 (D. Del. June 7, 2010) ......................................... 7, 9, 12

*Qinetiq Ltd. v. Oclaro, Inc.*,
   C.A. No. 09-372, 2009 WL 5173705 (D. Del. Dec. 18, 2009) ....................................... 7, 9, 12

*Stewart Organization, Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) .................................................................................................................. 6

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
   C.A. No. 08-838, 2009 WL 463977 (D. Del. Feb. 24, 2009) ................................................... 7

*Teleconference Systems v. Proctor & Gamble Pharmaceuticals, Inc.*,
   676 F. Supp. 2d 321 (D. Del. 2009) ................................................................................. 7, 11

*Virgin Wireless, Inc. v. Virgin Enterprises Ltd.*,
   201 F. Supp. 2d 294 (D. Del. 2002) ................................................................................ 11, 13

*Wacoh Co. v. Chrysler, LLC*,
   Nos. 08-cv-456, 08-cv-691, 2009 WL 36666 (W.D. Wis. Jan. 7, 2009) ............................... 3, 4

## Statutes

28 U.S.C. § 1404(a) ........................................................................................................... 1, 3, 6

I.      **INTRODUCTION**

        This case has little if any connection with the District of Delaware.  No Defendant

has any presence in Delaware beyond incorporation, while Plaintiff Wacoh Company ("Wacoh")

is a Japanese corporation with no connection to Delaware, and, indeed, no presence whatsoever

in the United States.  By joining geographically diverse Defendants in a single action in a state

where there is such a tenuous connection, Wacoh is attempting to maximize Defendants' burden

and avoid litigating in a venue that would have been most logical had the Defendants been sued

separately.

        Defendants InvenSense, Inc. ("InvenSense"), VTI Technologies, Inc. ("VTI"),

and Robert Bosch LLC ("Bosch") (collectively, "Defendants") accordingly jointly move

pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Northern District of California,

where the great majority of witnesses, documents, facilities, personnel, and much of the

potentially discoverable information are located.[1]  In particular:

- Each of the Defendants maintains major facilities in California and much of
  the potentially relevant documents and many of the witnesses are located
  there;

- Two Defendants, VTI and InvenSense, have their operations and personnel
  entirely in California, which would make litigating thousands of miles away
  an unfair burden on their business operations;

---

[1]     Defendant Kionix, Inc. ("Kionix") has separately moved to sever and transfer the claims
against it to the Northern District of New York.  (D.I. 38.)  To the extent Kionix's Motion
to Sever and Transfer is not granted, Kionix joins this motion.  Kionix's joining of this
motion makes no admission, or waiver, relating to its pending motion currently before the
Court.

- Highly sensitive technical material likely to be at issue in this case would be made available for inspection at InvenSense and VTI's respective California facilities, due to technical issues and security concerns, meaning that some measure of discovery will likely take place in California in any event; and

- No Defendant has any presence in Delaware beyond its incorporation.

In contrast, there are no similar supporting reasons for this action to stay in Delaware. Wacoh's decision to file suit in this district appears to stem largely from Wacoh's interest in forcing Defendants to litigate in a forum far from their home operations solely for tactical advantage and to burden the Defendants with the attendant costs and negative impact on their ongoing business activities. The Court should reject Wacoh's attempt to engage in forum-shopping (which, as explained below, has already been rejected in at least one other Wacoh litigation) and transfer this action to the more convenient venue of the Northern District of California.

## II.   **STATEMENT OF FACTS**

### A.   **Overview**

Wacoh filed this lawsuit on July 20, 2010, asserting that four different patents are infringed by five unrelated defendants.[2]  (D.I. 1.[3])  The technology at issue concerns integrated circuits that contain angular velocity sensors, which are specialized sensor devices used to detect physical motion.  Angular velocity sensors have applications in several industries – from

---

[2]   Wacoh voluntarily dismissed claims against Defendant Analog Devices, Inc. on November 12, 2010 (D.I. 7), and the remaining Defendants are VTI, InvenSense, Bosch, and Kionix.  All remaining parties have answered the Complaint, and Kionix's Motion to Sever and Transfer (D.I. 38) is also pending before the Court.

[3]   Cited docket entries refer to filings in this action unless otherwise indicated.

changing the display position on cell phones, to deploying airbags in automobiles.    The Defendants are all pioneers and market leaders in angular velocity sensors, whereas Wacoh's primary business appears to be licensing patents and filing patent lawsuits against the manufacturers, distributors, and purchasers of various types of sensors.

> **B.      Wacoh**

Wacoh is located in Saitama, Japan (just outside of Tokyo) and has no offices, employees, or other presence in the United States.  (D.I. 1, ¶ 1.)  Wacoh appears to have only ten employees including its president, Mr. Kazuhiro Okada, who resides in Japan and is the sole named inventor on the patents being asserted in this action.  (*See id.*)  Because it has no facilities or witnesses in the United States, it is likely that all of Wacoh's documents and witnesses are located in Japan.

In a separate litigation, Wacoh employed a similar approach of suing multiple defendants in a venue where witnesses, documents, and information were unlikely to be located. In *Wacoh Co. v. Chrysler, LLC,* 3:08-cv-456 & 3:08-cv-691[4], Wacoh sued a collection of automakers (a total of nine defendants) in the Western District of Wisconsin, notwithstanding that nearly all defendants' operations were in the Eastern District of Michigan.  *See*, *e.g.*, Micsky Decl., Ex. A, 3:08-cv-456, D.I. 111 at 3-5.  There, as here, the defendants moved to transfer pursuant to 28 U.S.C. § 1404(a), arguing, *inter alia*, that "the convenience of the parties, the convenience of the witnesses, and the interests of justice mandate that [the] case be transferred to the Eastern District of Michigan." *See id.* at 6.  In granting the defendants' motion to transfer, the Court emphasized the convenience of litigating in the transferee forum and recognized Wacoh's blatant forum-shopping:

---

[4]      The transfer order also consolidated these two litigations into 3:08-cv-456. *Wacoh Co. v. Chrysler, LLC*, Nos. 08-456 & 08-691, 2009 WL 36666, at *3 (W.D. Wis. Jan. 7, 2009).

> The overall convenience of litigating this case in the Eastern District of Michigan *is almost too obvious to state*. The primary defendants … have either their principal place of business or at least some relevant business operations in that district… *[Wacoh] is a Japanese corporation with no ties to Wisconsin; its only interest in litigating the case in this district is the relative speed of the docket*.

*Wacoh*, 2009 WL 36666, at *4 (emphasis added).

## C.   InvenSense

Defendant InvenSense is a designer and manufacturer of angular velocity sensors and is headquartered in Sunnyvale, California, which is within the Northern District of California.  (Decl. of Steven Nasiri in Supp. of Defs.' Mot. to Transfer ("Nasiri Decl."), ¶ 3.) InvenSense has no other U.S. facilities. (*Id.*)  InvenSense has a few small direct and indirect foreign subsidiaries located in Asia (Taiwan, Korea, and Japan) and Dubai that provide manufacturing or sales and customer support services.  (*Id.*, ¶ 4.)  InvenSense has 112 employees, all of whom, including InvenSense's CEO and Founder, CFO, and Vice Presidents of Engineering, Sales and Operations, reside and are employed in the Northern District of California.  (*Id.*, ¶ 3.)  The technical, engineering, sales, and corporate documents relating to the InvenSense products accused of infringement are located at InvenSense's Sunnyvale, California facilities.  (*Id.*, ¶ 4.)  Many documents, especially those related to InvenSense's design and manufacture of angular velocity sensors, are highly confidential and extremely sensitive.  (*Id.*) Further, many of these documents are available as computer files that can only be accessed with specialized software and cannot be converted to more readily accessible file formats for electronic discovery production without the purchase of expensive software licenses by third-

party vendors. [5]  (*Id.*)  In light of this, to the extent such documents are subject to discovery, InvenSense expects that they would be made available for inspection at InvenSense's northern California facility.  (*Id.*)

### D.    Bosch

Defendant Bosch markets and sells angular velocity sensors.  (Decl. of Sarah Taylor in Supp. of Defs.' Joint Mot. to Transfer Venue to the N.D. Cal. ("Taylor Decl."), ¶ 4.) Bosch has a research and technology center located in Palo Alto, California, which is in the Northern District of California, as well as other facilities in California, including several in northern California.  (*Id.*, ¶¶ 10-11.)  Some of Bosch's employees with potentially relevant knowledge regarding the accused Bosch products work at Bosch's facility in Palo Alto, but Bosch has no employees, facilities or relevant documents in Delaware.  (*Id.*, ¶¶ 5-7, 12.) Bosch's employees with knowledge of the accused sensors who do not reside in northern California work at Bosch's facilities in Michigan, which is also the location of most of the potentially relevant documents and things regarding the accused Bosch products in Bosch's possession, custody or control.  (*Id.*, ¶¶ 13, 15.)  Those employees would likely find it more convenient to travel to northern California, where Bosch maintains facilities, for case-related activities, than to Delaware, where Bosch has none.  (*Id.*, ¶ 14.)  Additionally, Bosch sells the accused angular velocity sensors directly to customers in California, but none of Bosch's direct customers for those accused sensors resides in Delaware.  (*Id.*, ¶¶ 8-9.)  Simply put, Bosch has no connection to Delaware other than the fact of its incorporation there but has significant, relevant contacts with the Northern District of California.

---

[5]    Wacoh has not offered to assume the costs associated with producing these materials in the event that they are responsive to appropriate discovery requests and Defendants reserve their rights to insist that Wacoh bear these costs.

### E.     VTI

Defendant VTI is a distributor of angular velocity sensors located in Pasadena, California.  (Decl. of Scott Smyser in Supp. of Defs.' Mot. to Transfer ("Smyser Decl."), ¶ 3.) VTI has only four employees, all of whom are employed in Pasadena, California. (*Id.*)  VTI does not maintain any other United States facilities except the Pasadena facility in California.  (*Id.*) All of VTI's documents, information, and electronic media (including highly sensitive documents stored in proprietary formats) are in VTI's California facility.  (*Id.*, ¶ 4.)

## III.   ARGUMENT

### A.     Legal Standard

A district court may transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice … to any other district or division where it might have been brought."  28 U.S.C. §1404(a).  This "vest[s] district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988)).   In determining whether to transfer a case pursuant to section 1404(a), courts must determine whether the case might have been brought in the proposed transferee district and whether the balance of private and public interest factors favor a transfer.  *See*, *e.g.*, *Jumara*, 55 F.3d at 879-80.

Courts in the Third Circuit consider several private and public interest factors when evaluating the appropriateness of a transfer.  The private interest factors include:

> (1) . . . the plaintiff's choice of forum and the defendant's forum preference;      (2) where the claim arose; (3) the convenience of the parties; (4) the convenience of the witnesses; and (5) the location of relevant records.

*Id.* The public interest factors include:

> (1) the enforceability of judgment; (2) practical considerations that
> could make the trial easier, quicker, and less expensive; (3) court
> congestion; (4) local interest in the controversy; (5) public policies
> of the forum state; and (6) the trial judge's familiarity with
> applicable state law.

*Id.*

This Court has transferred numerous cases to the Northern District of California on an appropriate showing pursuant to these factors. *See Mekiki Co. Ltd. v. Facebook Inc.*, C.A. No. 09-745, 2010 WL 2348740 (D. Del. June 7, 2010) (transferring case to N.D. Cal. where neither party had presence in Delaware); *Qinetiq Ltd. v. Oclaro, Inc.*, C.A. No. 09-372, 2009 WL 5173705 (D. Del. Dec. 18, 2009) (same); *see also Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 331 (D. Del. 2009); *Synthes USA, LLC v. Spinal Kinetics, Inc.*, C.A. No. 08-838, 2009 WL 463977 (D. Del. Feb. 24, 2009). As shown below, in this case, both the private and public factors strongly favor transfer to the Northern District of California.

**B.    Private Interest Factors Strongly Favor Transfer to the Northern District of California**

The relevant private factors, which include the parties' convenience, the location of records, the location of witnesses,[6] and where the claim arose, all favor transfer of this action to the Northern District of California. The remaining factor, Wacoh's forum choice, does not alter this outcome.

---

[6]    "Convenience of witnesses" refers to the convenience of third-party witnesses only. Witnesses employed by the parties are not considered under this factor and are instead analyzed under the "convenience of the parties."

1.      Northern California Would Be Clearly More Convenient for All Parties
        than the District of Delaware

The convenience of the parties is among the most important factors in the transfer analysis. *See*, *e.g.*, *Illumina, Inc. v. Complete Genomics*, C.A. No. 10-649, 2010 WL 4818083, at *3 (D. Del. Nov. 9, 2010) ("The convenience of the parties and witnesses, and the location of relevant evidence, are the most important factors in the § 1404(a) analysis.") (quoting *Teleconference Sys.*, 676 F. Supp. 2d at 331). Here, transfer to the Northern District of California would be more convenient for all of the Defendants and Wacoh.

The Defendants would benefit measurably from transfer to the Northern District of California. InvenSense is headquartered in that venue, and all of the material witnesses to the claims against InvenSense (with the exception of the Japanese Plaintiff and inventor) are located there. (Nasiri Decl., ¶¶ 3-5.) No relevant witnesses are located in Delaware. (*Id.*) Indeed, InvenSense's only connection with Delaware is its place of incorporation, which was changed from California to Delaware in 2004. (*Id.*, ¶ 3.) But for that fact, InvenSense likely would not even be subject to personal jurisdiction in this District. (*Id.*, ¶¶ 3, 6.) VTI, although not located in the Northern District of California, is located outside of Los Angeles – a short flight away from the proposed transferee venue. (Smyser Decl., ¶ 3.) And Bosch maintains a large research facility within the venue. (Taylor Decl., ¶ 10.) The practical benefits to Defendants' witnesses of litigating in northern California are obvious. It is certain that VTI's and InvenSense's witnesses and senior personnel will attend court hearings and participate in any trial in this action. To do so currently, these witnesses would have to fly across the continent, and across multiple times zones, to and from the East Coast. In practical terms, this travel burden would make numerous witnesses and business personnel unavailable to participate in their companies' business for a minimum of three days per transcontinental trip – the day(s) of any hearing or

court proceeding plus at least two travel days.  Similarly, Bosch's witnesses would benefit from having a facility nearby that can provide local support when their presence is required in northern California.  (Taylor Decl., ¶ 14.)

A transfer would also greatly reduce the strain Wacoh's lawsuit imposes on the Defendants.   VTI has only four employees, and extensive witness travel would cause a substantial hardship to VTI's business operations.  (Smyser Decl., ¶ 6.)  Similarly, InvenSense's business operations would be disrupted in the event its senior management team had to undergo extensive transcontinental travel.  (Nasiri Decl., ¶ 8.)  This organizational burden strongly favors transfer because litigating this action in Delaware would be highly disruptive to VTI's and InvenSense's operations.  *See Illumina, Inc.*, 2010 WL 4818083, at *3 (finding litigation in Delaware highly disruptive to business operations of Northern District of California based defendant).  Here, a transfer to California would also completely eliminate the time and expense associated with air travel for InvenSense's and Bosch's California witnesses.  Similarly, VTI's witnesses could take a flight of approximately one hour from the Los Angeles area to the Northern District of California, allowing for the potential of a one-day round-trip itinerary to participate in and observe court proceedings.  (Smyser Decl., ¶ 6.) Transfer to the Northern District of California would also eliminate the cost associated with numerous, multi-night hotel stays.

Notably, a transfer would have no corresponding downside to Wacoh.  Wacoh has no United States presence or employees, and Wacoh's witnesses and representatives must still travel from Japan to the United States for depositions and participation in court proceedings.  As such, the party-convenience factor strongly favors transfer because eliminating these burdens would greatly benefit the Defendants without prejudicing Wacoh.  *See Mekiki*, 2010 WL

2348740, at *3 (convenience to northern California defendant strongly favors transfer when foreign plaintiff faces substantial international travel to either district); *Qinetiq*, 2009 WL 5173705, at *3 (same).   Indeed, because Wacoh's key witnesses are located in Japan, the Northern District of California would actually be *more* convenient for Wacoh, as travel from Japan to California is substantially shorter, and cheaper, than travel from Japan to Delaware.[7]

2.    <u>The Location of Relevant Records In Northern California Strongly Favors Transfer</u>

Having documents in, or near, the transfer venue weighs in favor of transfer to that venue.  *See, e.g.*, *Illumina*, 2010 WL 4818083, at *3 (highlighting the convenience of the Northern District of California as a forum for parties with their documents in that district).[8] Here, relevant documents for InvenSense are located in the Northern District of California. (Nasiri Decl., ¶ 4.)   VTI's documents are located nearby at its offices in Pasadena. (Smyser Decl., ¶ 4.)   No party's documents are located in the District of Delaware.   (Nasiri Decl., ¶ 4; Taylor Decl., ¶ 7; Smyser Decl., ¶ 4.)   Therefore, the Northern District of California would be a more convenient forum than the District of Delaware.

Additionally, the *nature* of potential documents relevant to this litigation strongly favors transfer.   Although the parties have not yet exchanged discovery, it is likely that technical

---

[7]    Travelling from Tokyo to Philadelphia, the closest major international airport to Wilmington, Delaware, involves flights that are 16-18 hours.  Flights from Tokyo to San Francisco are typically 9-12 hours – just over half the length of flights to Philadelphia. The shorter Tokyo to San Francisco flights are correspondingly less expensive, by approximately $350.  (Micsky Decl., Ex. B, Reservation page printouts of comparative round-trip itineraries from Japan Airlines beginning March, 19, 2011 and ending March 26, 2011.)

[8]    This is true notwithstanding the advent of electronic discovery.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008) (concluding that the district court erred by not weighing the ease of access to information as part of its transfer analysis because certain materials were available electronically).

materials necessary to show the operation of the accused products will be requested by Wacoh and may be offered by Defendants to prove that their products do not infringe the patents-in-suit. Certain of those documents may be available only in electronic form via specialized software. This software is expensive to procure and the format utilized by these documents may preclude easy production or conversion to more accessible file formats.  (Nasiri Decl., ¶ 4; Smyser Decl., ¶ 4.)  The costs associated with potentially producing these materials makes on-site inspection a potential factor in this action.  If inspections were necessary, it would be far more convenient to make these materials available at the Defendants' California facilities as opposed to a remote location that would lead to expensive technical and logistical costs.

3.    The Claims Did Not Arise in Delaware

This factor is not entitled to significant weight in this case because Plaintiff's infringement claims do not narrowly define a site of alleged infringement.  *See Teleconference Sys.*, 676 F. Supp. 2d at 331 ("In the context of this action the 'where the claim arose' factor is not entitled to any significant weight because there is no one 'situs' of plaintiff's infringement claims").  Wacoh does not allege that the Defendants' actions in Delaware gave rise to the cause of action.  The allegations of infringement broadly concern the "making, offering to sell, selling, and using," of products allegedly incorporating the patented technology, and there is no specific connection between the cause of action and Delaware.  (*See* D.I. 1, ¶ 4.)  Indeed, none of the Defendants has any operations in Delaware, nor do the Defendants have any direct customers within the state.  As such, this factor also weighs in favor of transfer.

4.    Wacoh's Choice of Forum Deserves Little Weight

A plaintiff's choice of forum is accorded less weight when the chosen forum is not the plaintiff's "home turf" or meaningfully connected to the facts of the case.  *See Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 300 (D. Del. 2002).  The "'home turf

rule' is merely a short-hand way of saying that ... the weaker the connection between the forum and either the plaintiff or the lawsuit, the greater the ability of the defendant to show sufficient inconvenience to warrant a transfer." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 199 (D. Del. 2002). Neither Wacoh nor the Defendants are litigating on their "home turf" – Wacoh is located only in Japan, while Defendants have their operations in California and/or otherwise outside of Delaware. (D.I. 1, ¶¶ 1, 3, 5, 6.) Transfer to the Northern District of California is common when the plaintiff is a foreign company without any presence in the United States. *Mekiki*, 2010 WL 2348740, at *3 (transferring litigation brought by Japanese plaintiff against defendant whose principal place of business is in northern California); *Qinetiq*, 2009 WL 5173705, at *3 (transferring litigation brought by U.K. plaintiff against defendant whose principal place of business is in northern California).

Although Defendants are all incorporated in Delaware, that fact alone is not dispositive and should not preclude transfer. *See APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) ("Where an alternative forum is more convenient and has more substantial connections with the litigation, incorporation in Delaware will not prevent transfer.") (internal quotations omitted); *Qinetiq*, 2009 WL 5173705, at *7 ("[I]t is clear that a party's incorporation in Delaware is not dispositive of a motion to transfer."). Indeed, this Court has transferred a case to the Northern District of California even where all the parties – including the plaintiff – were incorporated in Delaware. *See Illumina*, 2010 WL 4818083, at *3.

Not only is Delaware not Wacoh's "home turf," it would force geographically diverse, unrelated defendants to defend a lawsuit across the country from their respective bases of operations. Even Wacoh admits that none of Defendants maintains operations in Delaware. (D.I. 1, ¶¶ 2-6.) Indeed, the Complaint alleges that the five named Defendants are located in five

other states.  (*Id.*)  According to the Complaint, VTI is alleged (erroneously) to be headquartered in Michigan[9] (D.I. 1, ¶ 5), Bosch is headquartered in Illinois (*id.*, ¶ 3), InvenSense is headquartered in California (*id.*, ¶ 6), and Analog Devices (which has since settled and been dismissed) is headquartered in Massachusetts (*id.*, ¶ 2).  Given the absence of any party's "home turf" in this district, Wacoh's choice of forum should be accorded little weight and cause this factor to strongly favor Defendants' transfer.  *See Virgin Wireless,* 201 F. Supp. 2d at 300; *Affymetri*x, 28 F. Supp. 2d at 199.  In stark contrast to Wacoh's lack of a "home turf" in Delaware (or anywhere else in this country), the significant locus of the parties' U.S. activities is in California, where three of the four remaining Defendants (Analog Devices having been dismissed) have facilities, and where two of them are headquartered.  (Nasiri Decl., ¶ 3; Taylor Decl., ¶¶ 10-11; Smyser Decl., ¶ 3.)  The fourth Defendant, Kionix, also has no connection to Delaware, but is headquartered in New York, with all operations there.  (D.I. 40, ¶ 4.)  Notably, the Defendants filing this motion are all accused of infringing the same two patents.  (D.I. 1, ¶¶ 17, 19, and 20.)  Kionix, on the other hand, is accused of infringing a different patent.  (*Id.*, ¶ 18.)  There are no overlapping patents between the movants here and Kionix.

### C.   Public Interest Factors Strongly Favor Transfer to the Northern District of California

Of the six public factors, the practical considerations of litigating this action in the Northern District of California, the congestion of the Delaware Court, and the local interest of resolving this action in the Northern District of California strongly favor transfer.  The remaining public factors of judgment enforceability, public policy, and judicial knowledge of state law are neutral when it comes to determining transfer in patent cases because of the federal nature of patent law.  *See Acuity Brands, Inc. v. Cooper Indus., Inc.*, C.A. No. 07-444, 2008 WL 2977464,

---

[9]      VTI's only facility is in Pasadena, California. (Smyser Decl., ¶ 3.)

at *3 (D. Del. July 31, 2008) ("[I]t is well settled that patent rights are not considered state or local matters and do not implicate local interests.").

> 1. <u>Practical Considerations and Court Congestion Favor Transfer to the Northern District of California</u>

The practical considerations associated with litigating in the Northern District of California would make the trial "easier, quicker, or less expensive" than proceeding in this venue. *See Illumina*, 2010 WL 4818083, at *6 (analyzing the "practical considerations" factor and explaining that the Northern District of California is the appropriate forum because many of the witnesses and much of the relevant evidence is located in California). As explained above, transferring this case to the Northern District of California will lessen the expense and disruption to Defendants' day-to-day business operations, with no negative effect on Wacoh. *See id.*

Court congestion in the District of Delaware is closely aligned with these practical considerations and further supports transfer. For example, case-disposition statistics demonstrate that the Northern District of California offers a shorter median time to trial than the District of Delaware. As of early 2010, the Northern District of California had an average time to trial of 24.2 months – six months faster than the District of Delaware's average of 30.3 months. (Micsky Decl., Ex. C, Table C-5 of the Federal Judicial Caseload Statistics - March 31, 2010.) Thus, the Northern District of California's quicker time to trial strongly supports transfer to the Northern District of California.

> 2. <u>The Northern District of California Has a Stronger Interest in This Action</u>

The Northern District of California has a strong local interest in resolving this dispute because Bosch and InvenSense have a substantial presence within the venue. (Taylor Decl., ¶¶ 10-11; Nasiri Decl., ¶ 3.) In contrast, this action has no meaningful connection to the District of Delaware. Even if the accused products were sold nationwide (and Defendants do not

concede that they are), such sales would not create a "local" interest in Delaware.  *See In re TS Tech*, 551 F.3d at 1321 (explaining that sales of an accused product in the district did not create any "more or less of a meaningful connection to th[e] case" for citizens of that district than citizens of any other where the products were sold); *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).  For these reasons, the burden of a jury trial should not be imposed on the District of Delaware, where there is no particular connection to either the parties or the issues in suit, beyond Defendants' incorporation.  *See, e.g., Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.").

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants Bosch, VTI, and InvenSense respectfully request that this action be transferred to the Northern District of California.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

| | |
|---|---|
| *Of Counsel*: | Rodger D. Smith II (#3778) |
| Gianni Cutri | 1201 North Market Street |
| Bradley W. Micsky | P.O. Box 1347 |
| KIRKLAND & ELLIS LLP | Wilmington, DE  19899-1347 |
| 300 N. LaSalle | (302) 351-9200 |
| Chicago, IL 60654 | rsmith@mnat.com |
| (312) 862-2000 | |

*Attorneys for Defendant*
*VTI Technologies, Inc.*

POTTER ANDERSON & CORROON LLP

/s/ David E. Moore

Of Counsel:
Stuart J. Sinder
Mark A. Chapman
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Attorneys for Defendant Robert Bosch LLC

YOUNG CONAWAY STARGATT
& TAYLOR LLP

/s/ Pilar G. Kraman

Of Counsel:
Andrew E. Monach
Marcelo Guerra
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Elena C. Norman (#4780)
Pilar G. Kraman (#5199)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
enorman@ycst.com
pkraman@ycst.com

Attorneys for Defendant InvenSense, Inc

March 2, 2011

4117290

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2011, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

Richard K. Herrmann
Mary Matterer
MORRIS JAMES LLP

Richard L. Horwitz
POTTER ANDERSON & CORROON, LLP

Elena C. Norman
Pilar G. Kraman
YOUNG CONAWAY STARGATT & TAYLOR, LLP

I further certify that I caused copies of the foregoing document to be served on

March 2, 2011, upon the following in the manner indicated:

Richard K. Herrmann                         *VIA ELECTRONIC MAIL*
Mary Matterer
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19806

Matthew J.M. Prebeg                         *VIA ELECTRONIC MAIL*
Stephen W. Abbott
Chris M. Faucett
CLEARNMANPREBEG LLP
815 Walker, Suite 1040
Houston, TX 77002

Alisa Lipski                                *VIA ELECTRONIC MAIL*
Goldstein & Vowell, LLP
1177 West Loop South
Suite 400
Houston, TX 77027

Richard L. Horwitz                          *VIA ELECTRONIC MAIL*
POTTER ANDERSON & CORROON, LLP
1313 N. Market Street, 6th Floor
P.O. Box 951
Wilmington, DE 19899-0951

George R. McGuire                                                    *VIA ELECTRONIC MAIL*
Blaine T. Bettinger
BOND SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, NY 13202-1355

Elena C. Norman                                                     *VIA ELECTRONIC MAIL*
Pilar G. Kraman
YOUNG CONAWAY STARGATT &
     TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Andrew E. Monach                                                    *VIA ELECTRONIC MAIL*
Marcelo Guerra
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482

Stuart J. Sinder                                                    *VIA ELECTRONIC MAIL*
Mark A. Chapman
Matthew J. Fuast
KENYON & KENYON LLP
One Broadway
New York, NY  10004


                                                   */s/ Rodger D. Smith II*
                                                   _____
                                                   Rodger D. Smith II (#3778)