**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WACOH COMPANY<br>Plaintiff, | §<br>§<br>§ | |
| v. | § | C.A. No. 1:10-cv-00617-PD |
| | § | |
| ANALOG DEVICES, INC., and<br>ROBERT BOSCH LLC,<br>KIONIX, INC.;<br>VTI TECHNOLOGIES, INC. and<br>INVENSENSE, INC.;<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§ | Honorable Paul S. Diamond |

**WACOH'S RESPONSE TO BOSCH, VTI TECHNOLOGIES,**
**AND INVENSENSE'S MOTION TO TRANSFER VENUE**

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Tel: (302) 888-6800
Facsimile: (302) 571-1750
Email: rherrmann@morrisjames.com
Email: mmatterer@morrisjames.com

*Attorneys for Plaintiff Wacoh Company*

*Of Counsel*:

ClearmanPrebeg LLP
Matthew J.M. Prebeg (Admitted *Pro Hac Vice*)
(Texas Bar No. 00791465)
815 Walker, Suite 1040
Houston, Texas 77002
Tel: (713) 223-7070
Facsimile: (713) 223-7071
Email: mprebeg@clearmanprebeg.com

21 March 2011

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.  SUMMARY OF THE ARGUMENT ............................................................................. 2

III. STATEMENT OF FACTS ............................................................................................ 2

IV.  ARGUMENT ................................................................................................................ 3

   A.   LEGAL STANDARDS FOR TRANSFER OF VENUE ....................................... 3

   B.   THE PRIVATE INTEREST FACTORS FAVOR DELAWARE. ......................... 6

        1.   The Patent Venue Statute, 28 U.S.C. § 1400, Favors Delaware. ................ 6

        2.   The Movants Fail to Meet Their Burden of Showing the Factors
             "Strongly Weigh in Favor of Transfer." ..................................................... 6

        3.   Movants' Preference for the Northern District of California Should Be
             Accorded No Weight. .................................................................................. 7

        4.   The "Where the Claim Arose" Factor Is No Longer Considered in
             Transfer Analysis and Fails to Support Movants' Motion .......................... 7

        5.   The "Convenience of the Parties" by Location Factor Favors
             Delaware. .................................................................................................. 10

        6.   The "Convenience and Availability of Witnesses" Factor
             Does Not Favor Transfer. ......................................................................... 13

        7.   The "Location of Records and Other Documents" Factor
             Also Does Not Favor Transfer. ................................................................. 16

   C.   THE PUBLIC INTEREST FACTORS ALSO FAVOR DELAWARE. .............. 17

        1.   The "Enforceability of the Judgment" Factor Favors Delaware. .............. 17

        2.   The "Practical Considerations that Could Make Trial Easy,
             Expeditious, or Inexpensive" Factor Favors Delaware. ............................ 18

        3.   The "Relative Administrative Congestion" Factor Favors Delaware. ....... 18

        4.   The "Local Interest in Deciding the Dispute" Factor Favors Delaware. ... 19

V.   CONCLUSION ............................................................................................................ 20

**TABLE OF AUTHORITIES**

*Acuity Brands, Inc. v. Cooper Industries, Inc.*,
 C.A. No. 07-444-GMS, 2008 WL 2977464 (D. Del. July 31, 2008)........3, 4, 6, 11, 15, 16, 19

*Affymetrix, Inc. v. Synteni, Inc.*,
 28 F.Supp.2d 192 (D. Del. 1998)..............................................................4, 5, 7, 11, 13

*Ballard Med. Prod. v. Concord Laboratories, Inc.*,
 700 F.Supp. 796 (D. Del. 1983)) .........................................................................5, 7

*Bergman v. Brainin*,
 512 F.Supp. 972 (D. Del. 1981)...................................................................................3

*Carl Zeiss Meditec, Inc. v. Xoft, Inc.*,
 C.A. No. 10-308-LPS-MPT, 2010 WL 4024603 (D. Del. Oct. 13, 2010).............................15

*Gielata v. Heckman*,
 C.A. No. 10-378-LPS-MPT, 2010 WL 3940815 (D. Del. Oct. 6, 2010).........4, 5, 6, 10, 11, 16

*Illumina, Inc. v. Complete Genomics, C.A.*,
 C.A. No. 10-649, 2010 WL 4818083 (D. Del. Nov. 9, 2010) ...........................................16, 17

*ING Bank, FSB v. Palmer*,
 Civ. No. 09-CV-897-SLR, 2010 WL 3907825 (D. Del. Sept. 29, 2010) ...........................3, 16

*Jones Pharma, Inc. v. KV Pharm. Co.*,
 No. Civ. A. 03-786 JJF, 2004 WL 323109 (D. Del. Feb. 17, 2004)......................................19

*Jumara v. State Farm Ins. Co.*,
 55 F.3d 873 (3d Cir. 1995).........................................................................4, 5, 7, 16

*Nice Sys., Inc. v. Witness Sys., Inc.*,
 No. Civ. A 06-311-JJF, 2006 WL 2946179 (D. Del. Oct. 12, 2006)....................................5, 7

*Quantum Loyalty Systems v. TPG Rewards, Inc.*,
 Civ. No. 09-022-SLR, 2009 WL 890644 (D. Del. April 2, 2009)..............................3, 4, 6, 16

*Shutte v. Armco Steel Corp.*,
 431 F.2d 22 (3rd Cir. 1970) .................................................................................3

*Sunds Defibrator, Inc. v. Durametal Corp.*,
 No. CIV. A. 96-483 MMS, 1997 WL 74660 (D. Del. Jan. 31, 1997) ...................................13

*Truth Hardware Corp. v. Ashland Prods., Inc.*,
 No. C.A. 02-1541 GMS, 2003 WL 118005 (D. Del. Jan. 13, 2003) .........................................4

*Turn of the Century Solution, L.P. v. Int'l Rectifier Corp.*,
 No. Civ. 05-816-SLR, 2006 WL 1653143 (D. Del. Jun. 15, 2006)..........................................16

**STATUTES**

28 U.S.C. § 1391(c) ..................................................................................................................3

28 U.S.C. § 1400(a) ..............................................................................................................3, 6

28 U.S.C. § 1400(b) .................................................................................................................6

28 U.S.C. § 1404......................................................................................................................2, 3

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Wacoh filed this suit on July 20, 2010 against five defendants for infringing upon four of Wacoh's related patents pertaining to electronic acceleration, force, and/or angular velocity sensors.[1]  The original five defendants were: Analog Devices, Inc. ("ADI"); Robert Bosch, LLC ("Bosch"); VTI Technologies, Inc. ("VTI"); Invensense, Inc. ("Invensense"); and Kionix, Inc. ("Kionix").[2]  Wacoh dismissed ADI from the action on November 12, 2010.[3]

In their answers, Bosch, VTI, and Invensense ("movants") admitted venue to be proper in this Court.[4]  The movants also all separately demanded a jury trial here.[5]  The movants now, however, ask that this action be transferred to the Northern District of California.  Defendant Kionix has moved separately asking the Court to transfer this matter to the Northern District of New York,[6] but the movants claim Kionix, in the alternative, joins in their request to move the case to California.[7]

No Scheduling Conference has been set and discovery is expected to begin soon.  Wacoh submits this brief in opposition to the movants' motion to transfer venue to the Northern District of California.

---

[1]  Complaint, D.I. 1.

[2]  *Id.*

[3]  D.I. 7.

[4]  *See* (1) Bosch Answer and Counterclaims, D.I. 20, at 2, ¶¶ 7-8, admitting to the entirety of ¶ 8 of Wacoh's complaint, in which Wacoh asserted venue to be proper in this Court; and at 6, ¶ 10 claiming venue to be proper here for its counterclaims against Wacoh; (2) VTI's Answer and Counterclaims, D.I. 21, at 2, ¶¶ 7-8, admitting "venue is proper in the District of Delaware for this particular action" and also at 6, ¶ 3, in which VTI claims venue to be proper for its counterclaims; and (3) Invensense's Answer and Counterclaims, D.I. 23, at 2, ¶¶ 7-8, first asserting Wacoh's venue claim is a legal conclusion to which no response is required, but also stating, at 5, ¶ 6, that this Court is the proper venue for its counterclaims against Wacoh "because [Invensense's] counterclaims are closely related to the claims set forth in Wacoh's complaint."

[5]  *See* D.I. 20 at 9 (Bosch); D.I. 21 at 9 (VTI); D.I. 23 at 7 (Invensense).

[6]  D.I. 38.

[7]  *See* the movants' motion, D.I. 42 at 1, n. 1.

## II.    SUMMARY OF THE ARGUMENT

All defendants are Delaware corporations, but with headquarters scattered across North America.  Because Wacoh is a foreign corporation without a United States office, this district is the most efficient venue for this action, maximizing judicial economy and convenience for all parties.  A plaintiff's choice of venue is entitled to "paramount" consideration and will not be disturbed lightly unless the movant can show the balance of factors strongly favors transfer under 28 U.S.C. § 1404.  The movants fail to meet this burden.

Joinder, moreover, is to be liberally encouraged, and severance is typically discouraged unless it can be shown clearly to be the best way to serve judicial economy.  The movants also fail to meet this burden.  This action, involving Delaware defendants' infringement of several related patents, will require the parties to consider and analyze related patent specifications, a large volume of identical prior art references, and to construe related patent claim terms concerning the use of capacitance for excitation and sensing in MEMS devices, thereby raising common questions of fact and law that make joinder proper and severance inappropriate.  Transferring venue or severing the claims into separate actions would waste judicial resources and lead to inconsistency and uncertainty with respect to the patents' scope.

## III.    STATEMENT OF FACTS

Plaintiff Wacoh is incorporated in Japan, has its principal place of business in Saitama, Japan, and does not maintain offices in the United States.[8]  The defendants are domestic corporations scattered across the country – each having their primary offices in a different state: Kionix in New York, Invensense in California, Bosch in Illinois, VTI in Michigan.[9]

---

[8]  Complaint, D.I. 1 at ¶ 1.
[9]  *Id*. at 1-2.  Former defendant ADI, moreover, was headquartered in Massachusetts.  *Id*.  *See also* Smyser Decl. (VTI) in support of movants' motion, D.I. 45 at 1, ¶ 3; Taylor Decl. (Bosch),

All defendants – Kionix, Bosch, VTI, and Invensense – are incorporated in Delaware.[10] Bosch has been incorporated in Delaware since 1977, VTI since 2002, and Invensense since 2004.[11]  As discussed below, in light of the common questions of fact and law involving the defendants and the distance between each's principal place of business, Wacoh elected to sue the defendants here in Delaware, where all are incorporated, as allowed under 28 U.S.C. § 1391(c) and 28 U.S.C. § 1400(a), in an effort to maximize both judicial economy and efficiency and convenience for all concerned.[12]

## IV.   ARGUMENT

### A.   LEGAL STANDARDS FOR TRANSFER OF VENUE.

In a motion to transfer venue under 28 U.S.C. § 1404(a), the "burden of establishing the need to transfer rests with the movant."[13]  A movant has the burden of establishing "that the balance of convenience of the parties and witnesses *strongly favors* the defendants."[14]  Put differently:

---

D.I. 46 at 1, ¶ 1; Nasiri Decl. (Invensense), D.I. 44 at 2, ¶ 3; and Galvin Decl. in support of Kionix's Motion to Sever and to Transfer, D.I.40, at 2, ¶ 6.

[10]  *Id.* at 2.

[11]  See the Declaration of Brent Caldwell attached to this memorandum attached here as **Exhibit A**.  Kionix, moreover, has been incorporated in Delaware since 1993.  See Prebeg Decl. in support of Wacoh's Response to Kionix's separate Motion to Sever and to Transfer Venue, D.I. 47.

[12]  *Id.*

[13]  *ING Bank, FSB v. Palmer*, Civ. No. 09-CV-897-SLR, 2010 WL 3907825 at *1 (D. Del. Sept. 29, 2010); *see also Quantum Loyalty Systems v. TPG Rewards, Inc*., Civ. No. 09-022-SLR, 2009 WL 890644 at *1 (D. Del. April 2, 2009).

[14]  *Quantum Loyalty at *1*, citing Bergman v. Brainin*, 512 F.Supp. 972, 973 (D. Del. 1981) (emphasis added); *see also Acuity Brands, Inc. v. Cooper Industries, Inc*., C.A. No. 07-444-GMS, 2008 WL 2977464 at *1 (D. Del. July 31, 2008), *citing Shutte v. Armco Steel Corp*., 431 F.2d 22, 25 (3rd Cir. 1970) ("unless the balance of convenience strongly favors a transfer in favor of [the] defendant, the plaintiff's choice of forum should prevail").

> Transfer will be denied "if the factors are evenly balanced or weigh only slightly in favor of the transfer," or if a change in venue merely shifts the inconvenience to the nonmovant."[15]

A Court must defer to the plaintiff's choice of forum "as long as a plaintiff has selected the forum for some legitimate reason."[16] A "plaintiff's choice of venue," therefore, "[will] not be lightly disturbed."[17]

While a plaintiff's decision to sue somewhere other than its "home turf" district (defined as "the forum closest to the plaintiff's residence or principal place of business which can exercise personal jurisdiction over the defendants at the time the lawsuit is filed"[18]) can, in some circumstances, indicate that transfer would not be inconvenient for the plaintiff,[19] here Delaware is the only logical place for Wacoh to sue. Given the disparate states in which the movants maintain their offices, and given that all defendants are Delaware corporations, Delaware is the domestic forum closest to Wacoh's residence (Japan) that "can exercise personal jurisdiction over the defendants" here. Under the definition of "home turf," Delaware arguably is Wacoh's home turf venue in the context of this case.

Even if Delaware is not viewed as Wacoh's home turf forum, though, Wacoh's choice of Delaware is still considered "paramount" when weighing these factors and will not be disturbed lightly.

> Regardless of whether the plaintiff is leaving or remaining on his "home turf" to file suit in Delaware, the degree of consideration paid to this choice stays the same – it is "paramount."[20]

---

[15] *Gielata v. Heckman*, C.A. No. 10-378-LPS-MPT, 2010 WL 3940815 at *2 (D. Del. Oct. 6, 2010) (citations omitted).

[16] *Quantum Loyalty* at *1 (citations omitted).

[17] *Acuity Brands* at *1, *citing Truth Hardware Corp. v. Ashland Prods., Inc*., No. C.A. 02-1541 GMS, 2003 WL 118005 at *1 (D. Del. Jan. 13, 2003) and *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

[18] *Gielata* at *2, *citing Affymetrix, Inc. v. Synteni, Inc*., 28 F.Supp.2d 192, 197 (D. Del. 1998).

[19] *See*, *e.g.*, *Quantum Loyalty* at *1.

[20] *Affymetrix* at 199.

The movants thus must show the "balance of convenience and the interests of justice" *strongly* weigh in favor of transfer upon the court's consideration of multiple private and public interest factors relevant under the circumstances of the particular case.  It is the movants' "responsibility to prove that litigating in the plaintiff's [chosen] forum [Delaware] 'would pose a unique or unusual burden on its operations.'"[21]   Mere "inconvenience to a defendant is insufficient to warrant transfer."[22]

The Third Circuit has developed a list of private and public interest factors a district court may consider in determining motions to transfer venue.  The private interests include:

> [T]he plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their physical and financial condition, the convenience of the expected witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records, but only to the extent that they could not be produced in the alternative forum.[23]

The Public interest factors include:

> [T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; [and] the local interest in deciding local controversies at home, the public policies of the fora.[24]

As discussed in this memorandum, the movants fail to meet their burden of showing these private and public factors weigh even slightly in favor, much less "strongly in favor," of transfer.  Nor do the movants meet their burden of showing proceeding in the state where they

---

[21] *Gielata* at *2, *citing Amgen, Inc. v. Ariad Pharm., Inc.*, 513 F.Supp.2d 34, 45 (D. Del. 2007).

[22]  *Gielata*, *citing Nice Sys., Inc. v. Witness Sys., Inc.*, 2006 WL 2946179 (D. Del. 2006) ("A transfer is not warranted 'simply because the transferee court is more convenient for defendants") (*citing, in turn, Ballard Med. Prod. v. Concord Laboratories, Inc.*, 700 F.Supp. 796, 801 (D. Del. 1983)).

[23] *Gielata* at *1 and n.1, *citing Affymetrix* and *Jumara.*

[24]  *Gielata* at *2, *citing Jumara* at 879-80.

chose to incorporate "would pose a unique or unusual burden on its operations."[25]  This case thus should remain in Delaware where all the defendants are incorporated.

### B.       THE PRIVATE INTEREST FACTORS FAVOR DELAWARE.

#### 1.       The Patent Venue Statute, 28 U.S.C. § 1400, Favors Delaware.

The patent venue statute allows plaintiffs to sue infringers "where the defendant resides…has committed acts of infringement and has a regular and established place of business,"[26] or, in "the district in which the defendant or his agent resides or may be found."[27] This includes suits against Delaware corporations in Delaware.

> Delaware clearly has a substantial interest in maintaining lawsuits brought by its corporate citizens and between Delaware corporations.  Having received the benefits of Delaware incorporation, a defendant cannot now complain that another corporation has chosen to sue it there.[28]

Thus, while the patent venue statute allows Wacoh to sue the defendants in the various districts where they maintain headquarters (New York, California, Illinois, and Michigan), it also allows a consolidated suit against them here, where all have chosen to incorporate, in the interest of judicial economy and for the convenience of all concerned.

#### 2.       The Movants Fail to Meet Their Burden of Showing the Factors "Strongly Weigh in Favor of Transfer."

Plaintiff's choice of forum is "paramount" and should not be disturbed[29] "as long as a plaintiff has selected the forum for some legitimate reason."[30]  The movants fail to demonstrate how Wacoh's decision to sue the defendants in Delaware, where all have chosen to incorporate, and when the four defendants maintain their headquarters in four separate states scattered across

---

[25]  *Gielata* at *2.
[26]  Motion, D.I. 39 at 12, citing 28 U.S.C. § 1400(b).
[27]  28 U.S.C. § 1400(a).
[28]  *Acuity Brands* at *2 (citations omitted).
[29]  *Gielata* at *2.
[30]  *Quantum Loyalty* at *1 (citations omitted).

North America, is in any way "irrational" or fails to reflect a "legitimate concern."  On the contrary, because Wacoh has no U.S. office, and because the defendants are scattered across the United States and the world but all are incorporated here, Delaware is the maximally efficient and logical place to file suit – especially where the defendants are infringing upon closely related patents whose specifications, cited prior art, and claim term constructions will involve important, common questions of fact and law.

### 3.    Movants' Preference for the Northern District of California Should Be Accorded No Weight.

As this Court has noted, the "plaintiff and defendant's preference" private interest factors "collapse into" other, more central, factors in the list, such as the convenience of the parties and the location of documents.[31]   This Court consistently has held, however, that mere "inconvenience to a defendant is insufficient to warrant transfer."[32] As discussed in the following sections, the movants fail to show how litigating where they chose to incorporate is inconvenient, and in the end express nothing more than a mere preference for their chosen forum.  Defendants' mere preferences for a different venue, however, are given no weight in this test.[33]

### 4.    The "Where the Claim Arose" Factor Is No Longer Considered in Transfer Analysis and Fails to Support Movants' Motion.

This Court also has noted the "Where the Claim Arose" private interest factor, originally enumerated by the Third Circuit in *Jumara,* similarly "collapses into other listed factors," such as the "convenience of the parties, witnesses, and evidence" factor, and should not to be considered separately.[34]  Movants fail to point this out, instead arguing the factor weighs in favor of transfer.

---

[31] *Affymetrix*, 28 F.Supp.2d at 201.
[32]  *Affymetrix*, *citing Nice Systems* ("A transfer is not warranted 'simply because the transferee court is more convenient for defendants.'") (*citing Ballard*, 700 F.Supp. at 801.
[33]  *Affymetrix* at 201 ("The Court…affords no weight to [a defendant's] mere preference to be elsewhere").
[34] *Affymetrix* at 201.

The movants do not argue their infringing products were made, offered for sale, sold, or used in the Northern District of California, where they ask the Court to move this case.  Rather, they fail to make or support any such claims and instead merely argue there is no evidence of any such activity in Delaware.[35]  Even if that were true, however, (which Wacoh contests), it is not considered separately under this test.

The movants cannot reasonably argue their products and business activities do not touch upon this district, where all have been incorporated for years, given the global scope and nature of the movants' businesses.  Bosch is part of a huge, foreign conglomerate with offices around the world (and, although a Delaware entity, its U.S. headquarters and primary offices are in Illinois), selling its products in all 50 states and around the world.[36]

Invensense, also a Delaware corporation, maintains a headquarters in Sunnyvale, California, and its testing and production facilities in Taiwan.[37]  Invensense also operates through official branches in Japan, Taiwan, Korea, and Dubai; distributors in Japan, Taiwan, Korea, China, Singapore, Malaysia, Europe, and domestically in the State of Colorado; as well as through sales representatives in France, Canada, and domestically in New Jersey, Florida, California, Illinois, Massachusetts, and Texas.[38]  Invensense claims, on its website, to be a "global market leader" in the types of motion-based sensors at issue in this suit.[39]  It also sells its products directly from its website to all 50 U.S. states – including Delaware – as well as globally.[40]

---

[35] Motion, D.I. 42 at 11.
[36] Caldwell Decl. at Exhibit A.2.
[37] *Id*. at Ex. A.5.
[38] *Id*.
[39] *Id*.
[40] *Id*.

VTI Technologies, also a Delaware corporation, claims misleadingly in the motion, supported by the declaration of its Vice President, that "VTI is located in Pasadena, California…has only four (4) employees," and that "VTI has no other facilities or employees…."[41]  VTI, however, is in fact merely the U.S. "sales office" of a large, multi-national corporation whose "headquarters and production facilities" are located in Vantaa, Finland.[42]  VTI's website boasts of multiple "sales offices in Germany, the USA, Japan and China," and that its "products are sold *worldwide* through an extensive distributor network," scattered throughout the world and domestically in states as diverse as Michigan, Minnesota, New York, Oregon, Illinois, California, Missouri, Washington, Wisconsin, Arizona, Texas, Indiana, and Massachusetts.[43]  VTI's website also claims it operates its "manufacturing operations in Mexico and China," and that "more than 99% of the company's products are sold on international markets."[44]

Because all of the movants produce, test, and sell products globally – even featuring prominent links where customers anywhere in the United States or around the world may buy their products online,[45] the movants cannot reasonably argue their production and sale of infringing products take, or took, place solely outside the District of Delaware (and conversely, none of the movants even argues these activities predominate in the Northern District of California), or that the movants did not know, and could not have anticipated, their products would be used or sold in Delaware.  This factor, to the extent it even may be considered separately under this Court's balancing test, thus fails to support transfer.

---

[41]  Motion, D.I. 42 at 9; Smyser Decl., D.I. 45, at 1 ¶ 3.
[42]  Caldwell Decl. at Ex. A.4.
[43]  *Id*. (emphasis added).
[44]  *Id*.
[45]  *Id*.

**5.      The "Convenience of the Parties" by Location Factor Favors Delaware.**

A plaintiff's choice of forum may not be disturbed unless the movant can "prove litigating in the plaintiff's forum 'would pose a unique or unusual burden on its operations,'" and that "the balance of convenience of the parties and witnesses strongly favor [transfer]."[46] Transfer is not proper if the factors are evenly balanced, *or even when they (unlike here) slightly favor transfer*, given the strong policy in favor of the plaintiff's choice of forum.[47]   The movants here fail to meet their burden of showing why the circumstances strongly favor the Northern District of California over Delaware.

Their motion correctly points out Wacoh is a Japanese corporation without United States offices.[48]   That fact, however, favors Delaware, not California.   As noted, all of the defendants are Delaware entities, but maintain offices and production facilities in scattered U.S. states and foreign countries.

Bosch, moreover, claims its documents and products relevant to the suit are at its facilities in Michigan (thus indicating Michigan, not California, is the appropriate facility here).[49] Invensense's production facilities are in Taiwan.[50]   And VTI fails to disclose here, but advertises on its website, that both its headquarters and production facilities are actually in Finland.[51]   What VTI calls its headquarters in the motion (in southern California), it describes merely listed as its U.S. "sales office" on its website.[52]

---

[46]   *Gielata* at *2.
[47]   *Gielata* at *2.
[48]   Motion, D.I. 42 at 3.
[49]   Taylor Decl., D.I. 46 at 2, ¶ 15.
[50]   Nasiri Decl., D.I. 44 at 3, ¶ 7.
[51]   Caldwell Decl. at Ex. A.4.
[52]   *Id.*

Delaware is the most efficient and practical venue in which to sue these Delaware entities over their common infringement of the closely related patents at issue. No other forum is common to all defendants, either in terms of headquarters or production facilities. Wacoh otherwise would be forced to file multiple, separate suits across the country.[53]   It is for this reason the patent venue statute specifically allows suit where defendants are incorporated.

This district cannot be considered inconvenient for any of the defendants.   With headquarters around the world and offices around the U.S., all chose to incorporate in Delaware, and all are "multi-million-dollar corporations with interests and activities spanning the globe."[54]

This Court requires a showing of "some sort of 'unique or unexpected' burden" to demonstrate Delaware is an inconvenient forum.[55]  The movants fail to meet that burden.  Indeed, this Court explicitly has found it "not inconvenient" for companies to travel "six thousand miles round trip" from California to litigate here -- even where all of the defendants were not, as they are here, Delaware entities.[56]  The case for Delaware venue is even stronger in this case.

The movants all have been incorporated here for years and, "[h]aving received the benefits of Delaware incorporation…cannot now complain that another corporation has chosen to sue it here."[57]  Bosch, in particular, cannot complain it is inconvenienced by litigating here given its long history of incorporation and litigation in Delaware – the undersigned notes its

---

[53]  Even if one were to accept the movants' claims here (which, as this response shows, would be contrary to fact and law), Wacoh still would be forced to maintain at least two different suits in this action: one in the Northern District of New York (vs. Kionix) and one in the Northern District of California.

[54]  *Affymetrix* at 201 (finding Delaware not inconvenient for companies headquartered in California who "must travel over six thousand miles round trip" to Delaware, given the companies' global reach, and since Delaware would be "equally inconvenient for all the parties").

[55]  *Gielata* at * 2.

[56]  *Id.*

[57]  *Acuity Brands* at *2.

attorneys in this case even recently boasted of winning a patent infringement case Bosch brought in this District before Judge Sue L. Robinson.[58]

Moreover, none of the movants is a small, regional corporation that reasonably could argue some hardship litigating here where they are incorporated.  Rather, as advertised on their websites, all movants are "global" companies, operating offices and selling their products around the world.[59]  Movants fail to show why litigating where they are incorporated imposes any greater burden than any other aspect of their international business operations.

Finally, the movants state that, [t]o the extent Kionix's [separate] Motion to Sever and Transfer [to the Northern District of New York] is not granted, Kionix joins in this motion [to transfer to the Northern District of California]."[60]  This group of defendant Delaware corporations thus now has asked the Court to transfer this case to two different venues on the opposite side of the country: California and New York.

Kionix, who recently claimed this District – where it is incorporated and located less than 200 miles from its headquarters – was inconvenient, reveals itself to be nevertheless willing and able to litigate on the other side of the country, in the Northern District of California, should this Court deny its motion.  The other defendants apparently support Kionix's request for New York while also arguing California would be more convenient than Delaware for all defendants, including Kionix.  These incompatible requests highlight the lack of merit of both motions and the need for a consolidated proceeding here, where all are incorporated.  Because this District is

---

[58]  Caldwell Decl. at Ex. A.3.; *see also*, as an example of Bosch's regular litigation history here, *Papendick v. Robert Bosch, GmbH*, 410 A.2d 148, 153 (Del. 1979) (The Delaware Supreme Court finding jurisdiction where Bosch's extensive commercial dealings in the state, including the use of various subsidiary entities, was a "clear example of an alien corporation purposefully acting in this State to invoke 'the benefits and protections' of Delaware laws….")

[59]  Caldwell Decl.

[60]  See Motion to Transfer Venue filed by defendants' Invensense; VTI Technologies, Inc.; and Robert Bosch, LLC, D.I. 42 at 1.

the only one common to all defendants, the "parties' respective locations" factor strongly favors

Delaware.

6.   **The "Convenience and Availability of Witnesses" Factor Does Not Favor Transfer.**

This factor does not weigh in favor of transfer.  First:

> Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated to procure the attendance of its own employees for trial.[61]

Similarly:

> Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies (especially in an action for patent infringement) because they "are usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any.[62]

Even where other, non-party-controlled fact witnesses may exist outside a jurisdiction's

subpoena power, that fact is not enough to tip the balance in favor of transfer, particularly where

the moving party fails, as movants do here, to identify and describe the expected testimony of

any such witnesses.

> Finally, with respect to the numerous "unnamed" individuals possibly residing in Silicon Valley who might possess some knowledge about either the prior art or the underlying facts giving rise to the lawsuit, the Court affords them no weight in its "balance of convenience" analysis.  Given the complete lack of specificity with which these witnesses were identified and the absence of "adequate information with respect to the content and materiality" of their testimony, the Court has no other choice but to discount them in its weighing test.[63]

---

[61]  *Affymetrix* at 203.
[62]  *Affymetrix* at 203.
[63]   *Affymetrix* at 205, *citing*, *inter alia*, *Sunds Defibrator, Inc. v. Durametal Corp.,* 1997 WL 74660 (D. Del. 1997) at *3 (for the proposition that "failing to specify the identity and testimony of potential witnesses fails to tip the balance of convenience in favor of transfer").

The movants here similarly fail to meet their burden of specifically identifying any non-party witnesses with relevant information who are not willing or available to testify here.[64]   This factor thus fails to support transfer.

Moreover, while the movants discuss the other "private interest factors" separately in their motion, the "witness location" factor is the notable exception.   The movants instead only briefly reference witnesses in a catch-all "convenience of the parties" section of their motion that improperly collapses and conflates several of the factors the Court must consider.[65]   They make this exception, perhaps, because witness location does not favor the Northern District of California.

Bosch's supporting declaration admits its headquarters are in Illinois but that most of the employees, witnesses, documents and products relevant to the litigation are in Michigan, closer to Delaware than California.   While Bosch admits it has a "Research and Technology Center in Palo Alto, California," its declarant only can bring herself to swear to Bosch having "[o]ne or more employees" at that center with potentially relevant knowledge.[66]

The declarant freely admits, however, Bosch has multiple employees with relevant knowledge in Michigan, where the company's pertinent documents and other information are located and maintained:

> Other *employees* of Bosch [the declarant here feels justified using the plural, but only can swear to "one or more" employees with knowledge at Bosch's Palo Alto, California, office] that have potentially relevant knowledge regarding the accused Bosch products work at Bosch's facilities in Farmington Hills, Michigan and Plymouth, Michigan.

*** 

---

[64]   *See generally* Taylor Decl. (Bosch), D.I. 46 – especially at 2, ¶¶ 6, 12-14; Smyser Decl. (VTI), D.I. 45 – especially at 2, ¶ 6; Nasiri Decl. (Invensense), D.I. 44.

[65]   Motion, D.I. 42 at 8-9, § III.B.1.

[66]   Taylor Decl., D.I. 46 at 2, ¶ 12.

> Most of the potentially relevant documents and things regarding the accused Bosch products in Bosch's possession, custody or control are located at Bosch's facilities in Farmington Hills, Michigan and Plymouth Michigan.

Taylor Decl., D.I. 46, at 2, ¶¶ 13, 15 (emphasis added).

Further highlighting the primary relevance of these Michigan-based witnesses, the Bosch declarant goes on to speculate, but without providing any proof, that she merely:

> [B]elieve[s] that these Michigan-based employees of Bosch *would likely* find it more convenient to travel to northern California…for litigation-related activities, than to Delaware, where Bosch has no facilities.

Taylor Decl., D.I. 46, at 2, ¶ 14 (emphasis added).

VTI similarly claims all its relevant documents, items, and witnesses are in southern California, requiring plane travel to reach the Northern District of California.[67]   And even Invensense, the only movant with its principal place of business in the Northern District of California, fails to identify any non-employee or controlled witnesses within that district, and likewise admits it produces its infringing products at issue in Taiwan, not California.[68]

As noted, none of the movants identifies any witnesses with specificity, nor does any one of them identify a single witness with relevant testimony located outside the District who is not willing or able to travel here to testify.[69]   The movants offer nothing but vague discussion of unnamed employee witnesses, fail to identify any other unavailable witnesses, and thus fail to meet their burden of proving this factor favors transfer.  This Court, in any case, frequently has discounted the fact that independent witnesses might exist outside its subpoena power in light of

---

[67]  Smyser Decl., D.I. 45 at 1.

[68]  Nasiri Decl., D.I. 44 at 3.

[69]  *See Carl Zeiss Meditec, Inc. v. Xoft, Inc.*, 2010 WL 4024603 (D. Del. 2010) at *2 (refusing to transfer even where third-party witnesses likely existed outside the Delaware District's subpoena power, where "[the movant] produced no substantiated evidence that third-party witnesses were unwilling to appear for trial," and noting that, in any case, "'a flight to Delaware is not an onerous task warranting transfer'"); *accord Acuity Brands* at *2.

the low percentage of cases that actually go to trial and the fact witnesses can be deposed anywhere.[70]  This factor therefore does not support transfer.

### 7.    The "Location of Records and Other Documents" Factor Also Does Not Favor Transfer.

A court "should consider the location of books and records in its [transfer] analysis only to the extent that the files could not be produced in the alternative forum."[71]  The fact that discovery today can be conducted anywhere, and the reality of electronic document discovery, significantly have reduced the weight of this factor.[72]  The movants fail to meet their burden of showing relevant documents cannot be produced here where they are incorporated.

The sole Delaware case movants cite in discussing this factor, *Illumina, Inc. v. Complete Genomics, C.A.*, C.A. No. 10-649, 2010 WL 4818083 (D. Del. Nov. 9, 2010) at *4, found the location of documents in that case weighed only "*minimally* in favor of transfer."  Even if all the factors here, on balance, were found slightly to favor transfer, that still would not be enough to overcome the strong presumption in favor of the plaintiff's chosen forum.[73]  Moreover, *Illumina* is distinguishable because, unlike here, <u>all of the parties</u> in *Illumina* – both plaintiff and

---

[70]  *ING Bank* at *1, n.1 (refusing to transfer where the moving party showed several independent witnesses existed in Washington State, holding "Given that less than 20% of all cases go to trial, and that witnesses can be deposed where they work, this argument is unpersuasive at this time"), *citing Quantum Loyalty* at *2, n.3; *see also Quantum Loyalty* at *2 (finding a New York defendant's arguments for transfer "unpersuasive" "[g]iven electronic discovery, electronic means for recording depositions, and the fact that trials go forward in less than 20% of all cases").

[71]  *Acuity Brands* at *3, *citing Jumara*, 55 F.3d at 879.

[72]  *Acuity Brands* at *3 (denying transfer to a Georgia-based Delaware corporation where most documents were shown to be located in Georgia, given that discovery can be conducted at any location, that "modern technology allows for the easy exchange of electronic discovery, and where the movant failed to show "the relevant documents could not be produced in Delaware"), *citing Turn of the Century Solution, L.P. v. Int'l Rectifier Corp.*, 2006 WL 1653143 (D. Del. 2006)at *3.

[73]  *Gielata* at *2.

defendants – maintained their principal places of business in Northern California.[74]   Here, however, all defendants are incorporated here but maintain headquarters in different states.  This makes Delaware – the state where all defendants are incorporated – the most logical and efficient forum for discovery.

Only one of the three movants, Invensense, bothers to articulate any reason why it cannot conveniently produce its documents electronically here, and even then only claims that "many [not "all" or even "most"] of the electronic records relating to InvenSense's product designs can only be viewed using expensive licensed software, such as simulation tools from Cadence Designs or Amsys."[75]   This, however, fails to show the electronic files cannot be produced electronically anywhere in the world, including this District, and to the extent it intends to argue plaintiffs might be inconvenienced, it is speculative, as well as irrelevant, since Wacoh's evaluation of convenience is reflected in its choice to sue here.

### C.   THE PUBLIC INTEREST FACTORS ALSO FAVOR DELAWARE.

#### 1.   The "Enforceability of the Judgment" Factor Favors Delaware.

The movants fail to discuss this public interest factor,[76] but it too favors Delaware, not transfer.  Because all defendants are Delaware entities and no party has contested this Court's jurisdiction, it is undisputed this Court has the power to enforce any judgment it might render against one or more Delaware defendants.

---

[74]   *Illumina* at *1, *7.

[75]   Bosch's declaration, D.I. 46, does not address electronic discovery at all; and VTI's declaration, D.I. 45, merely states that "[i]n the event that any of VTI's electronic media must be made available for inspection, VTI *would likely propose* to make it available at its Pasadena, California facility" (emphasis added).  This is both speculative and fails to meet VTI's burden of showing electronic discovery cannot be produced in litigation here, where VTI is incorporated.

[76]   *See generally*, Motion, D.I. 42.

## 2.   The "Practical Considerations that Could Make Trial Easy, Expeditious, or Inexpensive" Factor Favors Delaware.

The patents asserted against the movants – U.S. Patent Nos. 6,282,956 ("the '956 Patent," Exhibit A to Complaint, D.I. 1) and 6,865,943 ("the '943 Patent," Exhibit B to Complaint) – are closely related, the '943 patent even explicitly stating it is a "[d]ivision of …Pat. No. 6,282,956…." (Exhibit B to Complaint, D.I. 1).[77]

Because this is a patent infringement matter, with counterclaims for invalidity and non-infringement, this Court likely will need to consider each party's analysis of the prior art as it relates to patent validity, claim construction, and infringement analysis, and to make claim constructions of same or related terms.  If this Court were to transfer the claims, the task of analyzing this prior art would necessarily also be assigned to one or two other courts.  This would be inefficient and could lead to inconsistent results.

Delaware is the logical and maximally efficient place to bring this suit.  Wacoh is a foreign corporation, and all defendants are Delaware entities but maintain their headquarters and production facilities in different countries and U.S. states.  Proceeding here serves judicial economy by limiting this action, with common questions of law and fact, to a single suit in Delaware, where all defendants are incorporated, without forcing Wacoh to bring multiple suits in different locations in the United States, and without requiring other courts to perform the same analysis of prior art that will be required in Delaware.[78]

## 3.   The "Relative Administrative Congestion" Factor Favors Delaware.

The movants cite 2010 Federal Judicial Caseload statistics to show the Northern District of California "offers a shorter median time to trial than" Delaware (i.e., an "average time to trial"

---

[77] Also, as noted in Wacoh's Response to Kionix's Motion to Sever and to Transfer Venue, D.I. 47 at 14, these patents also are closely related to the '823 patent Kionix has infringed.

[78] Note defendants have filed requests to transfer claims both to the Northern District of New York and on the other side of the country in the Northern District of California. *See* D.I. 39, 42.

of 24.2 months versus 30.3 months in Delaware).[79]   The same statistics, however, actually reveal Delaware to be the more efficient and uncongested district under almost every other metric, with significantly fewer civil filings in total (1,110 vs. 6,247 for the Northern District of California), fewer civil filings per judgeship (289 vs. 435), significantly fewer pending cases in total (1,406 vs. 6,587), fewer pending cases per judgeship (410 vs. 523), identical "median times (months) from filing to disposition" (9.8 months), and fewer "weighted filings" per judgeship (550 v. 593).[80]   This factor therefore favors Delaware.

### 4.   The "Local Interest in Deciding the Dispute" Factor Favors Delaware.

The movants argue the Northern District of California has a greater interest in resolving this patent infringement case because "Bosch and InvenSense have a substantial presence within the venue."[81]   However, in Delaware, "[i]t is well settled that patent rights are not considered state or local matters and do not implicate local interests."[82]   The movants admit, contrary to the thrust of their declarations vaguely discussing sales in California, that even documented "sales of an accused product in a district" do not favor that district under this test.   Nothing in movants' arguments on this point thus favors the Northern District of California.

Delaware, on the other hand, "clearly has a substantial interest in maintaining lawsuits brought by its corporate citizens and between Delaware corporations."[83]   All movants here are Delaware entities, and all have raised counterclaims against Wacoh, all admitted venue to be proper, and all asked for a jury trial here.[84]   Despite requesting a jury trial for their

---

[79]   Motion, D.I. 42, at 14.

[80]   Caldwell Decl. at Ex. A.6.

[81]   Motion, D.I. 42 at 14.

[82]   *Acuity Brands* at *3, *citing Jones Pharma, Inc. v. KV Pharm. Co*., 2004 WL 323109 (D. Del. 2004), at *3.

[83]   *Acuity Brands* at *2.

[84]   See the movants' answers and counterclaims at D.I. 20 (Bosch), at 3; D.I. 21 (VTI) at 4; D.I. 23 (Invensense) at 7.

counterclaims, however, movants now, when it suits them, claim "the burden of a jury trial should not be imposed on the District of Delaware…."[85]  This argument is belied by their own pleadings, and because movants otherwise fail to meet their burden on this point, this factor favors Delaware, where all are incorporated.

## V.     CONCLUSION

The movants thus fail to meet any aspect of their heavy burden of showing these private and public factors weigh "strongly in favor" of transfer and outweigh the "paramount" consideration: plaintiff's choice of venue.  On the contrary, these factors overwhelmingly weigh in favor of Wacoh's choice of Delaware as the best venue for its suit against these defendants. The motion to transfer therefore should be denied.


                                                             */s/ Richard K. Herrmann*
                                                             Richard K. Herrmann (#405)
                                                             Mary B. Matterer (#2696)
                                                             Morris James LLP
*Of Counsel:*                                                500 Delaware Avenue, Suite 1500
                                                             Wilmington, DE 19801
ClearmanPrebeg LLP                                           Tel:  (302) 888-6800
Matthew J.M. Prebeg                                          Facsimile:  (302) 571-1750
(Texas Bar No. 00791465)                                     Email:  rherrmann@morrisjames.com
815 Walker, Suite 1040                                       Email:  mmatterer@morrisjames.com
Houston, Texas  77002
Tel.:  (713) 223-7070                                        *Attorneys for Plaintiff Wacoh Company*
Fax: (713) 223-7071
Email:  mprebeg@clearmanprebeg.com

---

[85]  Motion, D.I. 42 at 15.

# EXHIBIT   A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WACOH COMPANY | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 1:10-cv-00617-PD |
| | § | |
| ANALOG DEVICES, INC., and | § | |
| ROBERT BOSCH LLC, | § | Honorable Paul S. Diamond |
| KIONIX, INC.; | § | |
| VTI TECHNOLOGIES, INC. and | § | |
| INVENSENSE, INC.; | § | |
| Defendants. | § | |

**DECLARATION OF BRENT T. CALDWELL IN SUPPORT OF
WACOH'S RESPONSE TO BOSCH, VTI TECHNOLOGIES,
AND INVENSENSE'S MOTION
TO TRANSFER VENUE**

I, Brent T. Caldwell, declare under penalty of perjury:

1.      I am an attorney with Clearman Prebeg, LLP, lead counsel for Wacoh in the captioned case. I am over the age of 18 and am competent to testify in this matter.

2.      I have personal knowledge of the items set out in this declaration.

3.      Attached to this Declaration as Exhibit A.1. is a true and accurate copy of pages printed from the Delaware Corporations Division website showing Bosch, VTI, and Invensense all have been incorporated in Delaware for years: Robert Bosch, LLC formed here in 1977, VTI incorporated in 2002, and Invensense incorporated in 2004.

4.      Attached to this Declaration as Exhibit A.2. is a true and accurate copy of pages printed from Bosch's website discussing the company's $53 billion in sales in 2009 and its global reach, including its 300 subsidiaries and affiliated companies" in "more than 60 countries," and "275,000 associates, 159,000 of them outside Germany." The attached pages from its website also:

1

      a.    State Bosch has "approximately 20,350 employees in more than 70 locations throughout the U.S., Canada, and Mexico," and that "North America is the company's largest market outside Germany."

      b.    State Bosch maintains three Research and Technology Centers, not only one in California as disclosed in Bosch's supporting declaration here, but also in "Cambridge, Mass. and Pittsburgh, Pa. [sic]" – close to this District – and *all of which*, Bosch claims to be "devoted exclusively to R&D of Bosch products and systems, including advancements in Automotive Technology and enhanced security systems" (the types of products at issue in this patent infringement case).

      c.    List, immediately following the description of Robert Bosch, LLC's "Research and Technology Centers" for automotive systems in Michigan and California, a contact telephone number with a Michigan area code (248), not California.

    5.    Attached as Exhibit A.3. is a true and accurate copy of a page printed from the website of Kenyon & Kenyon, LLP – Bosch's attorneys in this matter – celebrating the firm's victory in a patent infringement case Bosch recently brought as a plaintiff in this District before Judge Sue Lewis Robinson.

    6.    Attached as Exhibit A.4. is a true and accurate copy of pages printed from VTI's website showing that (1) VTI's "headquarters and production facilities are located in Vantaa, Finland"; (2) the company's "products are sold worldwide through an extensive distributor network"; (3) VTI sells its products online, through links on its website to U.S. distributors, throughout the world and the United States – including to this Court's zip code (19801); and (4) VTI describes its sole U.S. office (in Pasadena, (southern) California) merely as a "sales office."

7.     Attached as Exhibit A.6 is a true and accurate copy of pages printed from Invensense's website on March 8 and March 14, 2011, announcing Invensense as a "global market leader in intelligent motion processing solutions…" involving "an integrated circuit (IC) that incorporates motion sensors such as gyroscopes, with associated software…" including "MEMS gyroscopes" and other technology of the type at issue in this patent infringement case. The attached pages also:

a.     State the company's "test operations" are in Taiwan, not California, and that the company has "sales and applications support offices in Taiwan, Korea, Japan and Dubai."

b.     State Invensense maintains full-fledged offices in Taiwan, Japan, Korea, and Dubai; distributors in Japan, Korea, Taiwan, China, Singapore, Malaysia, Thailand, Germany, and domestically in Colorado and California; and "sales representatives" in France, Canada, and domestically in New Jersey, Massachusetts, Florida, California, Illinois, and Texas.

8.     Attached as Exhibit A.7. is a true and accurate copy of printouts from the Federal Courts website[1] showing additional portions of Table C "U.S. District Courts – Civil Cases Commenced, Terminated, and Pending During the 12-Month Periods Ending March 31, 2009 and 2010," as well as individual "U.S. District Court – Judicial Caseload Profile" printouts for this District and the Northern District of Delaware.

///

///

///

///

---

[1] http://www.uscourts.gov/Statistics/FederalJudicialCaseloadStatistics/FederalJudicialCaseloadSt atistics2010.aspx; *see also* http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsd2010Sep.pl.

Under penalty of perjury under the laws of Texas and of the United States, I declare the foregoing to be true and correct.

SIGNED this _21st_ day of March, 2011, at Houston, Texas.

_Brent T. Caldwell (TX Bar. No. 24056971)_
BRENT T. CALDWELL

4

# EXHIBIT A.1.

3/14/2011
Division of Corporations - Online Services

JOHN DICKINSON PLANTATION  |  PHOTO BY JEFFREY BOYER

## Department of State: Division of Corporations

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service
Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request
How to Form a New
Business Entity
Certifications, Apostilles
& Authentication of
Documents

Frequently Asked Questions    View Search Results

### Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | 0832960 | Incorporation Date / Formation Date: | 01/03/1977 (mm/dd/yyyy) |
| Entity Name: | ROBERT BOSCH LLC | | |
| Entity Kind: | LIMITED LIABILITY COMPANY (LLC) | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | CORPORATION SERVICE COMPANY | | |
| Address: | 2711 CENTERVILLE ROAD SUITE 400 | | |
| City: | WILMINGTON | County: | NEW CASTLE |
| State: | DE | Postal Code: | 19808 |
| Phone: | (302)636-5401 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like    Status    Status,Tax & History Information    Submit

Back to Entity Search

To contact a Delaware Online Agent click here.

site map  |  about this site  |  contact us  |  translate  |  delaware.gov

Division of Corporations - Online Services

Delaware.gov | Text Only

Governor | General Assembly | Courts | Elected Officials | State Agencies

JOHN DICKINSON PLANTATION | PHOTO BY JEFFREY BOYER

---

**Department of State: Division of Corporations**

---

Frequently Asked Questions   View Search Results

### Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | 3562722 | Incorporation Date / Formation Date: | 08/27/2002 (mm/dd/yyyy) |
| Entity Name: | VTI TECHNOLOGIES, INC. | | |
| Entity Kind: | CORPORATION | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | NATIONAL REGISTERED AGENTS, INC. | | |
| Address: | 160 GREENTREE DRIVE SUITE 101 | | |
| City: | DOVER | County: | KENT |
| State: | DE | Postal Code: | 19904 |
| Phone: | (302)674-4089 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ⦿ Status  ⦾ Status,Tax & History Information  [ Submit ]

Back to Entity Search

To contact a Delaware Online Agent click here.

---

site map  |  about this site  |  contact us  |  translate  |  delaware.gov

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service
Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request
How to Form a New
Business Entity
Certifications, Apostilles
& Authentication of
Documents

3/14/2011          Division of Corporations - Online Services

Delaware.gov | Text Only         Governor | General Assembly | Courts | Elected Officials | State Agencies

---

JOHN DICKINSON PLANTATION | PHOTO BY JEFFREY BOWER

---

**Department of State: Division of Corporations**

---

Frequently Asked Questions    View Search Results

## Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | 3839064 | Incorporation Date / Formation Date: | 08/05/2004 (mm/dd/yyyy) |
| Entity Name: | INVENSENSE, INC. | | |
| Entity Kind: | CORPORATION | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | THE CORPORATION TRUST COMPANY | | |
| Address: | CORPORATION TRUST CENTER 1209 ORANGE STREET | | |
| City: | WILMINGTON | County: | NEW CASTLE |
| State: | DE | Postal Code: | 19801 |
| Phone: | (302)658-7581 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ⊙ Status   ⊙ Status,Tax & History Information   [ Submit ]

Back to Entity Search

To contact a Delaware Online Agent click here.

---

site map   |   about this site   |   contact us   |   translate   |   delaware.gov

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service
Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request
How to Form a New
Business Entity
Certifications, Apostilles
& Authentication of
Documents

**EXHIBIT A.2.**

3/8/2011                          Robert Bosch GmbH - Media Center

 Search   Contact  Where to buy  My Bosch                    Terms of Use   03/08/2011

Invented for life    BOSCH

Bosch.us

**Media Center**
- Headlines
- Recent Headlines
- Executive Bios
- Press kits
- Archive
- Press images

**Service**
- Info basket
- Press contacts in the U.S.
- E-Mail Service in the U.S.

**Company**
- Supervisory Council
- Board of Management
- Executives North America
- Bosch worldwide
- Bosch in the U.S.



Press Images

**Additional media**
- ▸ Bosch Household Appliances
- ▸ Bosch Rexroth
- ▸ ZF Lenksysteme
- ▸ Robert Bosch Foundation
- ▸ Bosch in North America Brochure (PDF, 872 KB)

# Bosch North America

**The Bosch Group in North America**

Bosch is a leading global supplier of automotive and industrial technology, consumer goods and building technology. Founded in Stuttgart, Germany in 1886 by Robert Bosch, the company originated as "Workshop for Precision Mechanics and Electrical Engineering." Including its 300 subsidiaries and affiliated companies today, the Bosch Group is present in more than 60 countries, and has some 275,000 associates, 159,000 of them outside Germany.

**Global Ownership**
92% of the share capital of Robert Bosch GmbH is held by a charitable foundation - Robert Bosch Stiftung, which carries on the social commitment and endeavors of the company founder in the areas of science, health and humanitarian aid, international understanding, and youth, education, and civic society. Its special ownership structure guarantees the company's financial independence and makes it possible for the company to develop a long-term perspective in its actions. 7% of the share capital is held by the Bosch family. 1% share is held by Robert Bosch GmbH.

**Global Sales**
2009 sales of the Bosch Group were over 38 billion euros ($53 billion), down 15 percent over 2008.

**Worldwide:**
· Automotive Technology achieved 21.7 billion euros ($30 billion) in revenues, or 18 percent loss in 2009, and accounts for roughly 57 percent of business.

· Consumer Goods and Building Technology fell by 4.8 percent in 2009 to nearly 11.3 billion euros ($15.8 billion), accounting for about 30 percent of the overall business.

· Industrial Technology fell by 24 percent to 5.1 billion euros ($7.1 billion) in 2009 and accounts for about 13 percent of the business.

**Global Research & Development (R&D)**
Worldwide R&D expenditure in 2009 was 3.6 billion euros ($5 billion), roughly 9 percent of sales. With nearly 33,000 associates working in R&D globally, Bosch has over 12 percent of its workforce involved in research and development all over the world.

Each year, Bosch spends roughly 9 percent of its sales revenue for research and development and applies for over 3,000 patents worldwide. The company filed 3,872 patents in 2009, an average of 15 submissions per working day and an

Download
▸ **Press information** (PDF-File)

Info basket
▸ **Add press release to info basket**
▸ **To info basket** (no press release)

◂ **Media Center**

increase of 1 percent from 2008. About 45 percent of these patents were directed at protecting the environment and conserving resources.

### Bosch in North America

In North America, the Bosch Group manufactures and markets automotive original equipment and aftermarket products, drive and control technology, power tools and accessories, security systems, packaging technology, thermotechnology, household appliances, solar energy and healthcare. Bosch, which established its presence in the U.S. in 1906, today has approximately 20,350 employees in more than 70 locations throughout the U.S., Canada and Mexico. North America is the company's largest market outside of Germany.

Bosch's sales in North America represent 14 percent of the company's global sales. The Automotive Technology business contributes 62 percent of sales in the region. By 2015, Bosch North and South America sales should contribute 25 percent of the Group's global sales. Globally, 50 percent of sales are targeted to come from automotive and the balance from the Consumer Goods & Building Technology, and Industrial Technology business sectors.

|                                              | 2008        | 2009        |
|----------------------------------------------|-------------|-------------|
| Sales of Bosch Group in North America:       | $8.6 billion | $7.3 billion |
| Automotive Technology                        | $5.3 billion | $4.5 billion |
| Industrial Technology                        | $1.3 billion | $0.9 billion |
| Consumer Goods & Building Technology         | $2.0 billion | $1.9 billion |

### Key Executive

Peter Marks
Chairman, President and CEO, Robert Bosch LLC
Member of the Board of Management, Robert Bosch GmbH

### Recent Bosch North American mergers and acquisitions include:

· **Cobasys LLC,** an acquisition of SB LiMotive, Bosch's 50/50 joint venture with Samsung SDI, that develops, manufactures and markets nickel metal hydride batteries for use in hybrid vehicles.

· **Akustica, Inc,** which develops, manufactures and sells a complete portfolio of digital and analog micro electromechanical microphones.

· **aleo solar AG,** a solar module manufacturer, in which Bosch is the majority shareholder.

### Automotive Technology

As one of the largest North American automotive suppliers, Bosch develops, manufactures and supplies precision components and systems - including electrical and electronics, chassis and powertrain products - for vehicle manufacturers worldwide. Automotive Technology is Bosch's largest business sector in North America, with sales of

approximately $4.5 billion in 2009 and employing over 12,000 associates at approximately 30 primary locations.

· **Gasoline Systems**
Develops and manufactures modern gasoline-engine

systems that contribute to making vehicles more dynamic, cleaner and more economical.

· **Diesel Systems**
Develops engineering and production of high-precision diesel technology including injection and starter systems, as well as exhaust-gas treatment systems.

· **Chassis Systems Brakes**
Manufactures individual components for braking systems.

· **Chassis Systems Control**
Develops innovative solutions for active driving safety.

· **Electrical Drives**
Develops and manufactures mechatronic components and systems for body applications.

· **Starters Motors and Generators**
Develops starter motors and generators for passenger cars and commercial vehicles produced in a worldwide manufacturing network.

· **Car Multimedia**
Develops, produces and sells radio and navigation equipment.

· **Automotive Electronics**
Develops, produces and sells microelectronic products for automotive applications.

· **Automotive Aftermarket**
Responsible for the supply, sales and logistics of automotive parts for vehicle service; also manages the diagnostics, including workshop equipment and car multimedia.

· **Bosch Engineering Services**
Founded in 2007 as a fully owned subsidiary of Robert Bosch LLC and offers flexible engineering services with global expertise.

· **Steering Systems**
Develops, produces and sells steering systems for passenger and commercial vehicles.

· **Other joint ventures and partners (ETAS, AFCO, ZFLS)**

**Industrial Technology**
Bosch's North American Industrial Technology business sector reported sales of approximately $900 million in 2009. With roughly 2,900 associates in approximately 20 primary locations, Bosch makes a strong impact in this sector with its drive and control, packaging and solar energy portfolio.

· **Drive and Control Technology**
Bosch Rexroth offers a complete range of best-in-class products, systems and services for drive, control and motion technologies from mechanics, hydraulics and pneumatics to electronics and associated services.

· **Packaging Technology**
Specializes in packaging solutions for the pharmaceutical and food industries, as well as processing and packaging

solutions for the confectionery industry.

· **Solar Energy**
Specializes in renewable energy systems including
photovoltaic systems, which includes wafers, solar cells, thin-
film modules and crystalline PV modules.

**Consumer Goods & Building Technology**
With 2009 sales of $1.9 billion, the Consumer Goods and
Building Technology business sector employs roughly 5,100
associates at approximately 20 primary locations and supplies
products that include power tools, security systems,
thermotechonolgy and household appliances.

· **Power Tools**
Designs, manufactures and sells power tools and
accessories, rotary tools and accessories and lawn and
garden equipment under the brand names such as Bosch,
Skil, Dremel, RotoZip, Vermont American, CST Berger, and
Gilmour.

· **Security Systems**
Offers complete security solutions for intrusion, fire, closed
circuit television surveillance, access control and
management systems for airports, banks, government offices,
businesses and homes. Also includes communications
systems with brands such as Electro-Voice, Telex, Extreme
CCTV and RTS.

· **Thermotechnology**
Provides heating, hot water and ventilation systems, including
Bosch tankless water heaters, Buderus-brand boilers and
geothermal systems by FHP.

· **Household Appliances**
This joint-venture between Robert Bosch GmbH and Siemens
AG is the third-largest appliance manufacturer in the world.
Products include dishwashers, ovens, cooktops, ranges,
ventilation, refrigerators and small appliances sold under the
Bosch, Thermador and Gaggenau brands.

· **Healthcare**
Develops and sells technologies that allow clinicians to
remotely manage patient health under the brand names Visual
Telecommunications Network, Inc (ViTel Net) and Health Hero
Network.

**Research and Development**
· Innovations are a key element to Bosch's market strategy,
and that is why we invested over $5 billion globally in research
and development in 2009. Some 33,000 associates work in
this area, more than 1,800 of them in North America.

· The Bosch Research and Technology Center, with facilities in
Palo Alto, Calif., Cambridge, Mass. and Pittsburgh, Pa., is
devoted exclusively to R&D of Bosch products and systems,
including advancements in Automotive Technology and
enhanced security and safety systems. Bosch supports the
advancement of engineering at many notable universities
across the U.S., including Stanford University and Kettering
University.

**CONTACT:**

3/8/2011                              Robert Bosch GmbH - Media Center

Chandra Lewis
Robert Bosch LLC
(248) 876-6731
Chandra.Lewis@us.bosch.com
www.boschusa.com

**Note:** 2009 conversion rate: 1 Euro = $1.395 USD

Corporate Backgrounder – June 2010

▲ top of page

# EXHIBIT A.3.

Contact Us    Search [_____] ⇨



ABOUT US        ATTORNEYS        OUR PRACTICE        NEWS & PUBLICATIONS        EVENTS        CAREERS        IP RESOURCES

**District of Delaware Jury Favors Kenyon Client Robert Bosch LLC in Patent Infringement Case**                    BACK

PRESS RELEASE

New York, April 23, 2010 - Kenyon & Kenyon LLP won a jury verdict for Robert Bosch LLC against Pylon
Manufacturing Corp. in a patent infringement suit involving patents related to a type of windshield wiper
blade known as the beam blade, which Pylon sells under the Michelin trademark, among others. A District
of Delaware jury found two out of three of Bosch's patents valid and infringed.

The verdict follows a claim-construction ruling in the case, in which Judge Sue Lew is Robinson found
infringement with regard to one of Bosch's patents and determined that a patent which Pylon asserted in
a counter-claim was not infringed, leaving for trial only Pylon's liability on three of the asserted Bosch
patents, one of which Pylon had already been found to infringe. Judge Robinson also denied Pylon's
motion for summary judgment that two of the Bosch patents were invalid over the prior art. Trial began on
April 15. Issues pertaining to damages and willfulness were previously bifurcated. The case will proceed
to trial on issues pertaining to willfulness and damages.

Kenyon & Kenyon partners Michael Lennon, Mark Hannemann, and Jeffrey Ginsberg represent Robert
Bosch LLC. Pylon is represented by James Gale, Jeffrey Feldman and Gregory Hillyer of the Feldman Gale
firm.

**About Kenyon & Kenyon LLP**

Kenyon & Kenyon is consistently ranked by peers and in-house counsel as one of the top firms for
intellectual property law. Since its founding in 1879, the firm has provided its worldwide clientele with
litigation, prosecution, licensing and counseling services. Large and small enterprises and individuals
choose Kenyon to design and implement intellectual property strategies when it matters most. The firm
has offices in New York, Washington, DC, and Silicon Valley.

**Attorneys**

Michael J. Lennon
Mark A. Hannemann
Jeffrey S. Ginsberg

**Related Practices**

Intellectual Property
Litigation
Patents

**Related Industries**

Automotive

**Contact Us**

Gretchen Koehler
Director of Business
Development
212.908.6853

HOME  OFFICES  SITEMAP  LEGAL NOTICES
© 2004-2011 Kenyon & Kenyon LLP. All rights reserved.
ATTORNEY ADVERTISING

# EXHIBIT A.4.

- o Contact form

- Fin
- Eng
- Jpn
- Chn

- VTI in brief
- Administration
  - o Articles of Association
  - o Board of Directors
  - o Corporate Governance
  - o Management Group
- Financial information
- History
- Contacts



# The structure of the group

VTI Technologies Oy's headquarters and production facilities are located in Vantaa, Finland.

The company has sales offices in Germany, the USA, Japan and China. In addition, VTI's products are sold worldwide through an extensive distributor network.

## News

Dec 20, 2010
VTI Strengthens Market Presence in Asia

Nov 09, 2010
VTI to Enter MEMS Timing Device Market

Nov 08, 2010
VTI announces smallest 3-axis gyro sensor with lowest power consumption

Read More

- <u>Fin</u>
- <u>Eng</u>
- <u>Jpn</u>
- <u>Chn</u>

- <u>Contact information</u>
- <u>Find local representative</u>
- <u>Order online</u>
- <u>Contact form</u>

- <u>Europe</u>
- <u>America</u>
  - <u>Mexico</u>
  - <u>USA</u>
  - <u>Canada</u>
  - <u>Brazil</u>
- <u>Asia</u>



© 2011 CloudMade - Map data CCBYSA 2011 OpenStreetMap.org contributors - Terms of Use

# USA

**VTI sales office**

VTI Technologies, Inc.
70 South Lake Ave., 10th Floor
Pasadena, CA 91101
USA

Tel +1 626 463 7011
Fax +1 626 463 7013
sales@vtitechnologies.com

**Distributor**

Digi-Key Corporation
701 Brooks Avenue
South Thief River Falls
MN 56701
USA

Tel. +1 800 344 4539
Fax +1 218 681 3380
www.digikey.com

Dove Electronic Components
39 Research Way
East Setauket, NY 11733
USA
Tel. +1 800 232 9825
Fax. +1 631 689 7362
www.doveonline.com

**Sales Representatives**

Fusion Technical Sales
1955 The Alameda, First Floor
San Jose, CA 95126
USA
Tel. +1 408 496 6068, x801
Fax. +1 408 716 2580
sales@fusiontechnical.com
www.fusiontechnical.com
Territories covered - CA (Northern)

**Sales Representatives**

Westmark Electronics, Inc.
8705 SW Nimbus Ave Suite 320
Beaverton, OR 97008
USA
Tel. +1 503 641 8780
Fax +1 503 641 8738
sales@westmarkco.com
www.westmarkco.com
Territories Covered – OR, ID

IRI
5215 Old Orchard Rd Suite 500
Skokie, IL 6007C
USA
Tel +1 847 967-8430
Fax +1 847 967-5903
sales@irirep.com
www.irirep.com
Territories covered – Northern IL

IRI
2025 Zumbehl Road, #71
St. Charles, MO 63303
USA
Tel +1 636 916-1179
FAX +1 847 967-5903
sales@irirep.com
www.irirep.com
Territories covered --Southern-IL, IA, KS, MO, NE

Westmark Electronics, Inc.
1750 - 112th Ave NE
Suite C-225
Bellevue, WA 98004
USA
Tel. +1 425 454 1944
Fax +1 425 454 2483
sales@westmarkco.com
www.westmarkco.com
Territories Covered – WA

IRI
2910 Brendon Way
Waukesha, WI 53188
USA
Tel +1 262 548-0203
FAX +1 262 524-0605
sales@irirep.com
www.irirep.com
Territories covered – Eastern WI

Fusion Technical Sales
2905 Stender Way, Suite 46
Santa Clara, CA 95054
USA
Tel. +1 408 496 6068
Fax. +1 408 716 2580
sales@fusiontechnical.com
www.fusiontechnical.com
Territories Covered – CA (Northern)

IRI
5001 American Blvd. West
Suite 10470
Bloomington, MN 55437
USA
Tel +1 952 831-3333
FAX +1 952 831-8336
sales@irirep.com
www.irirep.com
Territories covered – Western WI, MN, ND, SD


Bager Electronics
8400 S. Kyrene Road, Suite 224
Tempe, AZ 85282
USA
Tel. +1 480 968 7406
Fax. +1 480 968 8375
www.bagersales.com
Territories Covered – AZ, NM, NV, TX (El Paso)

Maxim Technical Sales
13811 Almahurst Ln.
Cypress, Texas 77429
USA
Tel. +1 713 826-1484
sales@maximtechnicalsales.com
www.maximtechnicalsales.com
Territories covered - AR, LA, OK, TX


R.O. Whitesell & Associates
3334 Founders Road
Indianapolis, IN 46268-1333
USA
Tel. + 1 317 876 9000
Fax + 1 317 876 0434
www.whitesell.com
Territories covered - IN, KY, OH, Western PA, WV

R.O. Whitesell & Associates
27333 Meadowbrook Road Suite 120
Novi, MI 48377-3542
USA
Tel. + 1 248 348 5454
Fax + 1 248 348 5422
www.whitesell.com
Territories covered - MI


Infinity Sales – Los Angeles Office
21800 Burbank Blvd., Suite 140
Woodland Hills, CA 91367
USA
Tel. +1 818 444 6250
Fax +1 818 444 6257
www.infinitysales.com
Territories covered – CA (Southern – Los Angeles)

Infinity Sales
3002 Dow Avenue, Suite 306
Tustin, CA 92780
USA
Tel. +1 714 669 8520
Fax +1 714 838 6408
www.infinitysales.com
Territories covered – CA (Southern – Orange County)


RLH Technical Sales, LLC
89 Pleasant St.
Hingham, MA 02043
USA

Tel. +1 617 938 3877

Fax +1 617 639 5454

Email rob@rlhrep.com

Territories covered – CT, ME, MA, NH, RI, VT

Copyright VTI Technologies

- Sitemap
- Legal notice
- Feedback
- Login to eVTI

- Top
- Print page

  ○ <u>Contact form</u>

- <u>Fin</u>
- <u>Eng</u>
- <u>Jpn</u>
- <u>Chn</u>

- <u>VTI in brief</u>
- <u>Administration</u>
- <u>Financial information</u>
- <u>History</u>
- <u>Contacts</u>



# Contacts

In all matters related to corporate affairs or investor relations, please contact:

Markku Hirvonen
President and CEO
Tel. +358 9 879 181
firstname.lastname@vti.fi

To order corporate material and information or photography, please contact:
<u>communication@vti.fi</u>

In sales or sample related matters, please contact: <u>sales@vti.fi</u>

To contact local sales network, please click <u>VTI world wide</u>

- ○ Contact form

- Fin
- Eng
- Jpn
- Chn

- Contact information
- Find local representative
- Order online
- Contact form

# Order online

VTI's products can be ordered online through these distributors.

Copyright VTI Technologies



Digi-Key Corporation
701 Brooks Avenue
South Thief River Falls
MN 56701
USA
Tel. +1 800 344 4539
Fax +1 218 681 3380

www.digikey.com

- Sitemap
- Legal notice
- Feedback
- Login to eVTI

- Top
- Print page



HY-LINE Sensor-Tec Vertriebs GmbH
Inselkammerstr. 10
D-82008 Unterhaching
Germany
Tel. +49 89 61 450 330
Fax +49 89 61 450 334
Email: sensortec@hy-line.de

http://shop.hy-line.de/

Dove Electronic Components
39 Research Way



East Setauket
NY 11733
USA

Tel. +1 800 232 9825
Fax. +1 631 689 7362

www.doveonline.com

3/14/2011

VTI Technologies Distributor | DigiKey



Quick Links: View Order | Order Status | Contact Us | Site Map | Change Country



My Digi-Key   Product Index   Supplier Index   Resources   Need Help?



Part Search →   Part Number/Keyword   GO   Live Online Chat



VTI Technologies - VTI Technologies is a leading supplier of acceleration, inclination, motion and pressure sensor solutions for automotive, medical, instrument and consumer applications. VTI develops and produces silicon-based capacitive sensors using its proprietary 3D MEMS (Micro Electro-Mechanical System) technology.

Along with the head office in Finland and the global partner network, VTI's international sales and marketing network includes offices in Germany, USA, Japan and China. Besides Finland, VTI also has manufacturing operations in Mexico and China. More than 99% of the company's products are sold on international markets. Less...



VTI Technologies
Part Search:

GO

Filter Results By:
☐ In Stock
☐ Lead Free
☐ RoHS Compliant

Part Search Listing by Category
RoHS & Lead (Pb)-Free
RoHS Certificate of Compliance
Manufacturer's Link



VTI Technologies Sensor
Solutions

| Product Training | Product Listing | Featured Products | Tools & Support |

▶ **PTM** *Online...On Demand*
PRODUCT TRAINING MODULES

Digi-Key's library of more than 1000 exclusive PTM Online... On Demand® product training modules is a collection of training tools created with you – the busy design engineer – in mind. They are provided with the cooperation of participating supplier partners. From this one source, you can learn about the latest products and technologies, download datasheets, check inventory, contact our technical staff, and place an order for same-day shipment.

These modules are available in audio and non-audio formats and listed by supplier in easy-to-find alphabetical order. Simply locate the module that interests you and click on your format of choice. We hope you find these tools useful, and with new modules added continuously, we invite you to stop back often to see what's new.

Product Training Modules Online...On Demand® is a registered trademark of Digi-Key Corporation.

 = Updated Product Training Module - PTM    = New Product Training Module - PTM

| Module Name | Audio | Non-Audio | Duration | Parts List |
|---|---|---|---|---|
| ● Automotive Accelerometer Platform | 2.6MB | 575KB | 10 min | Parts List |
| ● CMA3000 Low Power 3-Axis Accelerometer | 1.9MB | 602KB | 10 min | Parts List |
| ● SCA3000 3-axis Accelerometer | 1.6MB | 466KB | 5 min | Parts List |
| ● SCP1000 Pressure Sensor Series | 2.0MB | 576KB | 10 min | Parts List |
| ● VTI Gyro Combo | 1.7MB | 445KB | 5 min | Parts List |

All parts by: Title Manufacturer Category Manufacturer Part No.   |   Electronic parts by: Component Title Manufacturer Category Manufacturer Part No.
Part categories by: Name Manufacturer   |   Manufacturers by: Name Number of Parts   |   Products by: Category Title   |   Grouped parts by: Title Model Number
Austria Parts  Canada Parts  France Parts  Germany Parts  Italy Parts  Japan Parts  Spain Parts  United Kingdom Parts  United States Parts

Copyright © 1995-2011, Digi-Key Corporation. All Rights Reserved.
Privacy Statement | Terms & Conditions | Careers | webmaster@digikey.com

701 Brooks Avenue South, Thief River Falls, MN 56701 USA
Phone: 1-800-344-4539 or 218-681-6674 or Fax: 218-681-3380



My Digi-Key    Product Index    Supplier Index    Resources    Need Help?     

 Part Number/Keyword    GO    Live Online Chat

## Shipping Cost Estimator

International/Canadian Shipping Costs

Approximate shipping charges based on Zip/Postal Code: **19801**    ⟵ Delaware

| Description | 8 oz. | 1 lb. | 5 lbs. | 10 lbs. | COD Charge |
|---|---|---|---|---|---|
| UPS Ground (order by 8:00 PM CT) | $6.44 | $6.44 | $8.34 | $9.59 | $10.50 |
| UPS 3-Day Delivery (order by 8:00 PM CT) | $12.44 | $12.44 | $20.10 | $28.70 | $10.50 |
| UPS 2nd Day Air (order by 8:00 PM CT) | $18.21 | $18.21 | $29.75 | $47.73 | $10.50 |
| UPS Overnight (order by 8:00 PM CT) | $45.96 | $45.96 | $68.16 | $89.64 | $10.50 |
| U.S. Postal Service First Class Mail* (order by 6:00 PM CT) | $2.41 | Not Available | Not Available | Not Available | Not Available |
| U.S. Postal Service Priority Mail* (3-5 Day Delivery to most US addresses)(order by 6:00 PM CT) | $5.34 | $5.34 | $14.05 | $22.48 | Not Available |
| U.S. Postal Service Express Mail* (1-2 Day delivery guarantee)(order by 3:00 PM CT) | $24.25 | $29.75 | $47.05 | $69.55 | Not Available |
| FedEx Ground (order by 7:00 PM CT) | $6.44 | $6.44 | $8.34 | $9.59 | Not Available |
| FedEx Saver (3-Day Delivery) (order by 8:00 PM CT) | $13.88 | $13.88 | $21.65 | $33.47 | Not Available |
| FedEx Economy (2nd Day Air) (order by 8:00 PM CT) | $19.15 | $19.15 | $31.31 | $50.29 | Not Available |
| FedEx Overnight P.M. Delivery (order by 8:00 PM CT) | $43.63 | $43.63 | $63.61 | $88.58 | Not Available |
| FedEx Overnight A.M. Delivery (order by 8:00 PM CT) | $48.84 | $48.84 | $72.49 | $95.35 | Not Available |

**Digi-Key charges shipping fees based on the actual and/or dimensional weight of the package, ship method and published carriage rates.**
**Exact shipping fees are unknown until the order has been processed.**
**\* U.S. Postal Service Saturday Delivery at no additional charge.**

All parts by: Title Manufacturer Category Manufacturer Part No.  |  Electronic parts by: Component Title Manufacturer Category Manufacturer Part No.
Part categories by: Name Manufacturer  |  Manufacturers by: Name Number of Parts  |  Products by: Category Title  |  Grouped parts by: Title Model Number
Austria Parts  Canada Parts  France Parts  Germany Parts  Italy Parts  Japan Parts  Spain Parts  United Kingdom Parts  United States Parts

  

701 Brooks Avenue South, Thief River Falls, MN 56701 US
Phone: 1-800-344-4539 or 218-681-6674 or Fax: 218-681-33

pyright © 1995-2011, Digi-Key Corporation. All Rights Reserved.
vacy Statement | Terms & Conditions | Careers | webmaster@digikey.com

**EXHIBIT A.5.**



日本語  中文  한국어  Site map  Careers  Shop 🛒  Share

**Products   Applications   About Us   Support   Contact**   search

The Technology   Management   Investors   Board of Directors   Careers   Media Information

Home   About Us

## Company Profile



We are the pioneer and a global market leader in intelligent motion processing solutions that enable a motion-based user interface for consumer electronics. Our solutions are comprised of an integrated circuit (IC) that incorporates motion sensors, such as gyroscopes, with associated software and are differentiated by their small form factor, high level of integration, performance, reliability and cost effectiveness. While our solutions have broad applicability, we currently target consumer electronics applications such as console and portable video gaming devices, handset and tablet devices, digital still and video cameras, digital television and set-top box remote controls, 3D mice and portable navigation devices.

Our technology is comprised of four proprietary components: our patented Nasiri-Fabrication process, our advanced MEMS gyroscope design, our mixed-signal circuitry that provides sensor signal processing and enables SensorFusion technology critical to our MotionProcessing platform, and our MotionProcessing library and MotionApplication software solutions. As a result of our modular and scalable platform architecture, our products span increasing levels of integration, from single-axis analog gyroscopes to fully-integrated, intelligent three- and six-axis digital MotionProcessing solutions.

Founded in 2003, InvenSense is based in Sunnyvale, California, with test operations in Taiwan and sales and applications support offices in Taiwan, Korea, Japan and Dubai.



*The Leader in Consumer Motion Processing Solutions*

 
http://invensense.com/mems/about.html                                                                1/1

3/14/2011                    MEMS Gyro | Gyroscope | Motion Plus |...

**InvenSense**
*Innovation in MEMS*

日本語  中文  한국어  Site map  Careers  Shop  🛒  Share

Products    Applications    About Us    Support    Contact    search

Distributors    Sales    Request Info

Home    Contact

## Office Locations

**InvenSense Headquarters**
1197 Borregas Ave.
Sunnyvale, California 94089
408.988.7339 Main
408.988.8104 Fax
sales@invensense.com
pr@invensense.com

**InvenSense Taiwan**
1F, 9 Prosperity 1st Road
Hsinchu Science Park
30076, Taiwan
+886.3.6686999 Main
+886.3.6686777 Fax

**InvenSense Japan G.K.**
Nisso Building No. 16, 2F
3-8-8 Shin Yokohama
Kohoku-ku, Yokohama
222-0033, Japan
+81.045.308.9721 Main
+81.045.534.3005 Fax

**InvenSense Korea Ltd.**
#601, Jungle Bldg. 206-17
Nonhyun-Dong, Gangnam-Gu,
Seoul 135-833, Korea
+82.2.541.2900 Main
+82.2.541.2955 Fax

**InvenSense Dubai**
InvenSense Int'l FZE
Office 206, C Wing
Dubai Silicon Oasis
P.O. Box 341166
Dubai, U.A.E.
+971.4.3712790 Main
+971.4.3712792 Fax

Interactive Map:



View Larger Map

Directions from SFO and SJC airports

*The Leader in Consumer Motion Processing Solutions*

日本語   中文   Products   Applications   About Us   Support   Contact Us   Copyright InvenSense, Inc 2010                Share

# InvenSense

*Innovation in MEMS*

日本語  中文  한국어  Site map  Careers  Shop  🛒  Share

Products    Applications    About Us    Support    Contact    search

Distributors    Sales    Request Info

Home    Contact    Distributors

USA    JAPAN    KOREA    TAIWAN    CHINA    SINGAPORE / MALAYSIA / THAILAND    EUROPE

## United States

**Component Distributors, Inc**
2601 Blake St., Suite 200
Denver, CO 80205
Tel: 866-851-5776 x6250
Tel: 757-592-0418
www.cdiweb.com
Send email

**Bravo Electro-Components Inc**
1990 Russell Ave # 1
Santa Clara, Ca 95054
Tel: 1-408-733-9090
Fax1-408-733-8555
www.bravoelectro.com
Send e-mail

## Japan

**Internix**
8F Shinjuku i-Land Tower,
6-5-1 Nishi-Shinjuku
Shinjuku-ku, Tokyo, 163-1378 Japan
Tel +81-3-5322-1706
Fax +81-3-5322-1715
www.internix.co.jp
Send e-mail

## Korea

**Hadaru**
905-4 Hogye-dong,
Dongan-gu, Anyang-si
Gyeonggi-do, Korea 431-836
Tel.: 031-457-1144
Fax: 031-457-5544
www.hadaru.co.kr
Send e-mail

## Taiwan

**Edom Technology Co. Ltd**
8F, No. 50, Lane 10, Kee Hu Road,
Nei Hu, Taipei 114, Taiwan, ROC
TEL: 886-2-2657-8811
FAX: 886-2-2657-9090
edom-tech.com
Send e-mail

**Macnica**
Room 803, 8F, No.131, Sec.3
Mingsheng E. Road,
Songshan District City
Taipei City, Taiwan 10596, R.O.C
Tel.: 886-2-2547-1899
Fax 886-2-2547-1699
www.macnica.co.jp
Send e-mail

**RichPower**
12F, No. 207, Sec. 3, Beishin Rd.
Shindian City, Taipei County
Taipei, Taiwan 23143 R.O.C.
Tel: 886-2-8913-2577
Fax 886-2-8913-2377
www.rich-power.com.tw
Send e-mail

[Back to Top]

## China

### RichPower

**RichPower Electronic
Devices Co., Ltd.
Taiwan**
12F, No. 207, Sec. 3, Beishin Rd.
Shindian City,
Taipei County, Taipei, 23143 Taiwan
R.O.C.
Tel: +886-2-8913-2577
Fax +886-2-8913-2377
www.rich-power.com.tw
Send e-mail

**RichPower Electronic
Devices Co., Ltd.
Hong Kong**
Units C & G, 15th Floor, CDW Building,
388 Castle Peak Road,
Tsuen Wan, N.T., Hong Kong.
Tel: +852-2793-9442
Fax +852-2793-9480
www.rich-power.com.tw
Send e-mail

**WPG China(SZ) Inc. RichPower
Business Group
Shenzhen**
T6F,Block East H1,the Hua Qiao Cheng
Industrial Park,
East Qiao Cheng Rd. Nanshan,
Shenzhen, 518000 P.R.China
Tel: +86-755-2671-1655
Fax +86-755-8238-4428
www.rich-power.com.tw
Send e-mail

**WPG China Inc. RichPower**

**WPG China Inc. RichPower**

**Business Group**
**Shanghai**
1F 60# Building NO.461 Hongcao Road,
Shanghai,
200233 P.R.China
Tel: +86-21-5426-3188
Fax: +86-21-5426-0977
www.rich-power.com.tw
Send e-mail

**Business Group**
**Beijing**
Room B708 , Beijing Zhubang Business
Center No. 100
Balizhuang Xili, Chaoyang District
Beijing, 100025 P.R.China
Tel: +86-10-8586-5599
Fax: +86-10-8586-4160
www.rich-power.com.tw
Send e-mail

## Comtech Digital

**Comtech Digital**
**Technology Limited**
**Shenzhen**
15th Floor, Tower C, Skyworth Building
High-tech Industrial Park, Nanshan,
Shenzhen, 518057 China
Tel: +86 755-8602 4202
Fax: +86 755-2698 8278
www.comtech.com.cn
Send e-mail

**Comtech Digital**
**Technology Limited**
**Wuhan**
Suite 1103, United International Building
LuoYu Road, Hongshan, Wuhan.
430074 China
Tel: +86 27-87690655
Fax: +86 27-87690157
www.comtech.com.cn
Send e-mail

**Comtech Digital**
**Technology Limited**
**Beijing**
Suite 1103, Tower B, Shuma Building, 2
Nanda Street
Zhongguan Village, Haidian, Beijing,
10086 China
Tel: +86 10-51726678-831
Fax +86 10-51727874
www.comtech.com.cn/
Send e-mail

**Comtech Digital**
**Technology Limited**
**Qingdao**
Suite 306, Unit 3, Building 11, 2 AnSan
Road,Sifang, Qingdao,
266000 China
Tel: +86 13906395352

www.comtech.com.cn
Send e-mail

**Comtech Digital**
**Technology Limited**
**Shanghai**
Room 2204, Xinyin Building, 888 Yishan
Road, Shanghai

Tel: 86- 21-64320990
Fax 86-21-64320990-603
www.comtech.com.cn
Send e-mail

**Comtech Digital**
**Technology Limited**
**Xiamen**
Suite 703,44# Jiaxingli, Yongsheng
Xingchen, Huli District, Xiamen,
361009 China
Tel: +86 592-5639476
Tel: +86 13950156269
www.comtech.com.cn
Send e-mail

## Edom Technology

**Edom Technology Co. Ltd**
**Hong Kong**
10/F., Kian Dai Industrial Bldg.,
73-75 Hung To Rd., Kwun Tong,
Kowloon, Hong Kong
Tel.: 852-2763-0986
Fax: 852-3427-9707
edom-tech.com
Send e-mail

**Edom Technology Co. Ltd**
**Shanghai**
Floor 16, NO.20 Building, Tianlin Road
Caohejing Hi-Tech Park, Xuhui District,
Shanghai 200233 P.R. China
Tel.:86-21-33675222
Fax 86-21-54452824/54452834
edom-tech.com
Send e-mail

**Edom Technology Co. Ltd**
**Beijing**
Floor 9, Block A, Cyber Tower, No.2
Zhongguancun South Road
Haidian Dictrict,
Beijing 100086
Tel.: 86-10-62165009/51727850
Fax 86-10-51727394
edom-tech.com
Send e-mail

**Edom Technology Co. Ltd**
**Xiamen**
Room 1105,
Huteng Office Marason, No. 321
Jiahe Road, Xiamen China 361006
Tel.: 86-592-5070200
Fax 86-592-5208291
edom-tech.com
Send e-mail

**Edom Technology Co. Ltd**
**Shenzhen**
Room 2703, Hua Rong Building,
No.178 Mintian Road,
Futian District Shenzhen, 518048 China
Tel.:86-755-8358-8188/86-
13925215134
Fax86-755-83867117
edom-tech.com
Send e-mail

**Edom Technology Co. Ltd**
**Xi-An**
Room 8131, MingShi Building, No.1
Hanguang South Road, Xi'an P.R China
Phone: 86-29-8839-5005
Fax 86-29-8839-5005
edom-tech.com
Send e-mail

## Macnica

**Macnica**
**Hong Kong**
Room 702A-B, HanTang Building,
Oversea Chinese Town,
NanShan District,
SZ, China 518053
T: 86-755-25838380/86-13922868973
Fax 86-755-25838381
www.macnica.co.jp
Send e-mail

**Macnica**
**Shenzhen**
Unit 717, Concordia Plaza,
1 Science Museum Road,
Tsim Sha Tsui, Kowloon, Hong Kong
Tel.: 852-27220812/86-13502865615
Fax 852-27220120
www.macnica.co.jp
Send e-mail

## Singapore / Malaysia / Thailand

**Edom Technology Co. Ltd**
**Singapore**
Block 4012 Ang Mo Kio Avenue
10 #07-08 Techplace 1,
Singapore 569628
Tel.: 65-6346-5198
Fax 65-6459-6345

**Edom Technology Co. Ltd**
**Malaysia**
45A-9-1, Menara Kuda Lari, Jalan Lahat,
10450 Penang. Malaysia
Tel: 604 - 827-5912
Fax 604 - 826-5912
www.edom.com.tw

**RichPower**
**Electronic Devices Pte. Ltd.**
**Singapore**
16 Tai Seng Street #05-00, Singapore
534138

Tel: +65-6470-1482

www.edom.com.tw
Send e-mail

Send e-mail

Fax +65-6470-1473
www.rich-power.com.tw
Send e-mail

## Europe

**Macnica GmbH**
Ostermaierstrasse 1
85051 Ingolstadt
Germany
Phone: +49 (0)841 88198 201
FAX: +49 (0)841 88198 200
www.macnica.eu
Send e-mail

**Broadband Technology 2000 Ltd.**
Victory House,
17 & 19 Marino Way,
Finchampstead,
Berkshire. RG40 4RF
Tel: 44-0-1189-324600
Fax: 44-0-1189-730571
www.bt2000.co.uk
sales@bt2000.co.uk

**Scantec GmbH**
Clarita-Bernhard-Str. 25
81249 München
Tel: +49-89-899-1430
Fax +49-89-899-14327
www.scantec.de
Send e-mail

**Topas GmbH**
Grosser Kolonnenweg 18C3
D 30163 Hannover
Tel: +49 511 96864-0
Fax: +49 511 96864-64
www.topas.de
info@topas.de

[Back to Top]

*The Leader in Consumer Motion Processing Solutions*

日本語   中文   Products   Applications   About Us   Support   Contact Us   Copyright InvenSense, Inc 2010      Share


**InvenSense**
*Innovation in MEMS*

日本語  中文  한국어   Site map   Careers   Shop   🛒   Share

Products     Applications     About Us     Support     Contact     search

Distributors   Sales   Request Info

Home    Contact    Sales Department

## Sales Representatives: United States

**Analectro Inc.**
(DC, E.PA MD, NY, NJ, VA)

1950 Old Cuthbert Road, Suite K
Cherry Hill, NJ 08034
Tel: 1-856-795-6676
Fax: 1-856-795-4597
www.analectro.com
Send e-mail

**Centric Technical Sales**
( FL, SC, NC, GA, AL, MS, TN )

2625 Keystone Rd, Bldg 4 Suite 402
Tarpon Springs, FL 34688
Tel: 1-727-938-8994
www.centricrep.com
Send e-mail

**Cain-Forlaw Company**
( IL, WI, IA, MN, ND, SD, MO)

510 N Plum Grove Rd,
Palatine, IL 60067
Tel: 1-847-202-9896
Fax 1-847-202-9896
www.cain-forlaw.com
Send e-mail

**Micro Technology Group**
( CT, MA, NH, RI, Upstate NY, VT)

450 Chauncy Street, Unit 3
Mansfield, MA 002048
Tel: 1-508-337-3388
Fax: 1-508-316-3161
www.m-t-g.com
Send e-mail

**Harper & Two**
(Southern CA, Las Vegas-NV, AZ)

2798 Junipero Avenue
Signal Hill, CA 90755
Tel: 1-562-424-3030
Fax 1-562-424-6622
www.harperandtwo.com/
Send e-mail

**Semicom Sales, Inc**
(TX, KS)

8733 Shoal Creek Blvd
Austin, Texas 78757
Tel: 1-512-377-9355
Fax: 1-512-377-9321
www.semicomsales.com
Send e-mail

## Sales Representatives: Canada

**Electronics Sales Professionals**
(ESP) Inc. (Toronto)

300 Stills Lane,
Oakville, ON L6J 5Y5
Tel: 1-416-570-4700
www.espsales.com
Send e-mail

**Electronics Sales Professionals**
(ESP) Inc. (Ottawa)

340 Legget Drive, Suite 105,
Ottawa, ON K2K 1Y6
Tel: 1-613-592-9900
www.espsales.com
Send e-mail

**Electronics Sales Professionals**
(ESP) Inc. (Montreal)

609 Rue Herbert,
Salaberry-de-Valleyfield, QC J6S 2B5
Tel: 1-450-377-5364
www.espsales.com
Send e-mail

**Electronics Sales Professionals**
(ESP) Inc. (Western Canada)

500 W 10th Avenue, Suite 604,
Vancouver, BC V5Z 4P1
Tel: 1-604-875-6066
www.espsales.com
Send e-mail

## Sales Representatives: France

**Spectrum Design**
(France)

6 Avenue des Andes,
Miniparc – Batiment 9
91940 Les Ulis
Tel: 0033-1-64-86-43-10
Fax 0033-1-64-86-43-19
Send e-mail

## Request Sales Information

First Name:*                                   Last Name:*

Title:                                         Organization:*

Phone:*                                        Email:*

Address:*                                      City:*

3/14/2011                                          MEMS Gyro | Gyroscope | Motion Plus |...

State/Province:*   [ Delaware ▾ ]                  Zip/Postal     [                ]
                                                   Code:*

Country:*          [ USA ▾ ]                       Application:   [ -Select- ▾ ]

Area of Interest:  [ Product ▾ ]                   Product:       [ -Select- ▾ ]

            Comments/Details:   [                        ]

    **Would you like to receive our newsletters?*** ○ Yes  ○ No

    * Required Fields                    [ Submit ]   [ Reset ]

    InvenSense respects the privacy of your personal details and does not supply any information to Third Parties. If you would like to find out more, please read our Privacy Policy.

    If you have any questions, comments or complaints related to this Privacy Statement, please contact webmaster@invensense.com.

                                        *The Leader in Consumer Motion Processing Solutions*

        日本語   中文   Products   Applications   About Us   Support   Contact Us   Copyright InvenSense, Inc 2010   🇫  🔘  in      Share

# EXHIBIT A.6.

# DOCUMENT VIEWER

view full screen or print

## U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| DELAWARE | | | 2010 | 2009 | 2008 | 2007 | 2006 | 2005 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | | Filings* | 1,287 | 1,264 | 1,206 | 1,065 | 1,077 | 1,190 | | |
| | | Terminations | 1,143 | 1,243 | 1,222 | 975 | 1,419 | 1,448 | | |
| | | Pending | 1,638 | 1,501 | 1,482 | 1,511 | 1,501 | 1,853 | | |
| | % Change in Total Filings | Over Last Year | | 1.8 | | | | | 48 | 4 |
| | | Over Earlier Years | | | 6.7 | 20.8 | 19.5 | 8.2 | 29 | 2 |
| | Number of Judgeships | | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | Vacant Judgeship Months** | | 12.1 | 12.0 | 12.0 | 9.5 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 322 | 317 | 302 | 267 | 270 | 298 | 76* | 4 |
| | | Civil | 289 | 281 | 246 | 218 | 233 | 264 | 54 | 4 |
| | | Criminal Felony | 26 | 27 | 47 | 38 | 30 | 28 | 91 | 6 |
| | | Supervised Release Hearings** | 7 | 9 | 9 | 11 | 7 | 6 | 88 | 5 |
| | Pending Cases | | 410 | 375 | 371 | 378 | 375 | 463 | 38 | 4 |
| | Weighted Filings** | | 550 | 478 | 443 | 379 | 367 | 422 | 20 | 1 |
| | Terminations | | 286 | 311 | 306 | 244 | 355 | 362 | 80 | 5 |
| | Trials Completed | | 22 | 29 | 26 | 21 | 15 | 20 | 44 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 9.2 | 9.1 | 8.6 | 8.5 | 9.3 | 9.4 | 49 | 2 |
| | | Civil** | 9.8 | 8.3 | 11.2 | 12.5 | 16.8 | 10.9 | 67 | 5 |
| | From Filing to Trial** (Civil Only) | | 25.2 | 34.0 | 25.0 | 27.0 | 26.0 | 23.5 | 35 | 2 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 223 | 229 | 175 | 108 | 142 | 156 | | |
| | | Percentage | 14.9 | 17.2 | 13.8 | 8.2 | 10.6 | 9.1 | 82 | 4 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.1 | 1.1 | 1.1 | 1.2 | 1.2 | | |
| | Jurors | Avg. Present for Jury Selection | 61.71 | 44.62 | 46.03 | 41.56 | 39.60 | 39.82 | | |
| | | Percent Not Selected or Challenged | 41.4 | 27.0 | 28.8 | 31.7 | 24.1 | 22.8 | | |

**2010 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE**

| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 1156 | 77 | 27 | 218 | 9 | 4 | 30 | 128 | 48 | 282 | 137 | 8 | 188 |
| Criminal* | 103 | 4 | 17 | 13 | 31 | 17 | - | 12 | 1 | 2 | - | 3 | 3 |

\*  Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.

\*\* See "Explanation of Selected Terms."

# DOCUMENT VIEWER

view full screen or print

## U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| CALIFORNIA NORTHERN | | | 2010 | 2009 | 2008 | 2007 | 2006 | 2005 | Numerical Standing | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | | Filings* | 7,424 | 7,576 | 7,295 | 7,970 | 8,683 | 6,362 | U.S. | Circuit |
| | | Terminations | 8,640 | 7,403 | 7,402 | 6,777 | 6,983 | 6,966 | | |
| | | Pending | 7,327 | 8,579 | 8,882 | 9,005 | 8,157 | 6,557 | | |
| | % Change in Total Filings | Over Last Year | | -2.0 | | | | | 64 | 10 |
| | | Over Earlier Years | | | 1.8 | -6.9 | -14.5 | 16.7 | 14 | 5 |
| | Number of Judgeships | | 14 | 14 | 14 | 14 | 14 | 14 | | |
| | Vacant Judgeship Months** | | 33.9 | 22.0 | 5.9 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 530 | 541 | 521 | 569 | 620 | 455 | 22 | 7 |
| | | Civil | 435 | 433 | 441 | 505 | 558 | 390 | 16 | 4 |
| | | Criminal Felony | 52 | 64 | 42 | 33 | 37 | 39 | 64 | 10 |
| | | Supervised Release Hearings** | 43 | 44 | 38 | 31 | 25 | 26 | 20 | 7 |
| | Pending Cases | | 523 | 613 | 634 | 643 | 583 | 468 | 18 | 3 |
| | Weighted Filings** | | 593 | 607 | 592 | 624 | 621 | 543 | 16 | 5 |
| | Terminations | | 617 | 529 | 529 | 484 | 499 | 498 | 12 | 4 |
| | Trials Completed | | 12 | 6 | 6 | 8 | 8 | 10 | 80 | 12 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 8.7 | 6.9 | 11.2 | 12.4 | 11.2 | 12.6 | 42 | 7 |
| | | Civil** | 9.8 | 9.4 | 7.7 | 6.7 | 7.4 | 9.8 | 67 | 12 |
| | From Filing to Trial** (Civil Only) | | 21.5 | 24.5 | 30.0 | 24.9 | 25.0 | 28.0 | 23 | 4 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 837 | 1,220 | 468 | 393 | 528 | 530 | | |
| | | Percentage | 12.8 | 15.7 | 6.0 | 4.7 | 7.3 | 9.5 | 77 | 14 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.2 | 1.3 | 1.2 | 1.5 | 1.5 | | |
| | Jurors | Avg. Present for Jury Selection | 62.08 | 77.51 | 64.09 | 53.81 | 59.09 | 55.21 | | |
| | | Percent Not Selected or Challenged | 39.4 | 48.5 | 42.1 | 41.9 | 43.2 | 31.0 | | |

### 2010 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE

| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 6092 | 102 | 298 | 1388 | 92 | 310 | 611 | 610 | 316 | 451 | 799 | 84 | 1031 |
| Criminal* | 721 | 16 | 92 | 276 | 87 | 129 | 20 | 25 | 5 | 12 | 20 | 20 | 19 |

\*  Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.

\*\* See "Explanation of Selected Terms."

**Table C.**
**U.S. District Courts—Civil Cases Commenced, Terminated, and Pending**
**During the 12-Month Periods Ending March 31, 2009 and 2010**

| Circuit | Filings | | | Terminations | | | Pending | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2009 | 2010 | Percent Change [1] | 2009 | 2010 | Percent Change [1] | 2009 [2] | 2010 | Percent Change [1] |
| TOTAL | 258,535 | 262,307 | 9.2 | 238,640 | 285,603 | 19.7 | 302,808 | 299,512 | -1.1 |
| DC | 2,448 | 2,474 | 1.1 | 2,388 | 2,572 | 7.7 | 2,825 | 2,727 | -3.5 |
| 1ST | 6,152 | 6,217 | 1.1 | 5,796 | 5,958 | 2.8 | 7,016 | 7,275 | 3.7 |
| ME | 471 | 652 | 38.4 | 457 | 575 | 25.8 | 298 | 375 | 25.8 |
| MA | 2,754 | 2,866 | 4.1 | 2,869 | 2,815 | -1.9 | 2,811 | 2,862 | 1.8 |
| NH | 504 | 439 | -12.9 | 518 | 478 | -7.7 | 410 | 371 | -9.5 |
| RI | 1,134 | 1,027 | -9.4 | 475 | 641 | 34.9 | 1,919 | 2,305 | 20.1 |
| PR | 1,289 | 1,233 | -4.3 | 1,477 | 1,449 | -1.9 | 1,578 | 1,362 | -13.7 |
| 2ND | 22,865 | 22,755 | -0.5 | 21,874 | 22,985 | 5.1 | 37,665 | 37,435 | -0.6 |
| CT | 2,091 | 2,217 | 6.0 | 2,290 | 2,160 | -5.7 | 2,198 | 2,255 | 2.6 |
| NY,N | 1,453 | 1,506 | 3.6 | 1,608 | 1,576 | -2.0 | 2,080 | 2,010 | -3.4 |
| NY,E | 5,447 | 6,001 | 10.2 | 5,417 | 5,699 | 5.2 | 7,252 | 7,554 | 4.2 |
| NY,S | 11,922 | 10,883 | -8.7 | 10,762 | 11,311 | 5.1 | 23,177 | 22,749 | -1.8 |
| NY,W | 1,665 | 1,848 | 11.0 | 1,515 | 1,962 | 29.5 | 2,676 | 2,562 | -4.3 |
| VT | 287 | 300 | 4.5 | 282 | 277 | -1.8 | 282 | 305 | 8.2 |
| 3RD | 42,980 | 67,131 | 56.2 | 27,201 | 70,610 | 159.6 | 70,371 | 66,892 | -4.9 |
| DE | 1,074 | 1,110 | 3.4 | 1,124 | 942 | -16.2 | 1,238 | 1,406 | 13.6 |
| NJ | 6,679 | 7,121 | 6.6 | 7,220 | 7,079 | -2.0 | 5,659 | 5,701 | 0.7 |
| PA,E | 30,085 | 53,268 | 77.1 | 13,540 | 57,096 | 321.7 | 58,725 | 54,897 | -6.5 |
| PA,M | 2,423 | 2,797 | 15.4 | 2,335 | 2,595 | 11.1 | 2,016 | 2,220 | 10.0 |
| PA,W | 2,437 | 2,558 | 5.0 | 2,549 | 2,420 | -5.1 | 1,928 | 2,066 | 7.2 |
| VI | 282 | 277 | -1.8 | 433 | 478 | 10.4 | 803 | 602 | -25.0 |
| 4TH | 17,667 | 17,270 | -3.3 | 17,295 | 16,145 | -6.6 | 13,307 | 14,432 | 8.5 |
| MD | 3,590 | 3,526 | -1.8 | 3,416 | 3,470 | 1.6 | 3,066 | 3,122 | 1.8 |
| NC,E | 1,464 | 1,358 | -7.2 | 1,331 | 1,191 | -10.5 | 1,431 | 1,598 | 11.7 |
| NC,M | 955 | 1,057 | 10.7 | 996 | 889 | -10.7 | 754 | 922 | 22.3 |
| NC,W | 1,281 | 1,097 | -14.4 | 1,207 | 1,089 | -9.8 | 845 | 853 | 0.9 |
| SC | 4,113 | 3,600 | -12.5 | 4,081 | 3,700 | -9.3 | 3,251 | 3,151 | -3.1 |
| VA,E | 3,194 | 3,231 | 1.2 | 3,085 | 3,057 | -0.9 | 1,563 | 1,737 | 11.1 |
| VA,W | 1,020 | 1,124 | 10.2 | 1,041 | 1,077 | 3.5 | 592 | 639 | 7.9 |
| WV,N | 603 | 585 | -3.0 | 737 | 594 | -19.4 | 568 | 559 | -1.6 |
| WV,S | 1,647 | 1,692 | 2.7 | 1,401 | 1,078 | -23.1 | 1,237 | 1,851 | 49.6 |

40

## Table C. (March 31, 2010—Continued)

| Circuit | Filings | | | Terminations | | | Pending | | |
|---|---|---|---|---|---|---|---|---|---|
| | 2009 | 2010 | Percent Change [1] | 2009 | 2010 | Percent Change [1] | 2009 [2] | 2010 | Percent Change [1] |
| 9TH | 40,350 | 44,176 | 9.5 | 40,164 | 43,766 | 9.0 | 39,508 | 39,918 | 1.0 |
| AK | 380 | 359 | -5.5 | 364 | 342 | -6.0 | 358 | 375 | 4.7 |
| AZ | 3,302 | 3,745 | 13.4 | 3,515 | 3,612 | 2.8 | 2,927 | 3,060 | 4.5 |
| CA,N | 5,571 | 6,247 | 12.1 | 5,858 | 7,361 | 25.7 | 7,701 | 6,587 | -14.5 |
| CA,E | 5,324 | 5,681 | 6.7 | 4,770 | 5,546 | 16.3 | 6,750 | 6,885 | 2.0 |
| CA,C | 12,861 | 13,673 | 6.3 | 12,844 | 13,611 | 6.0 | 10,164 | 10,226 | 0.6 |
| CA,S | 2,832 | 3,336 | 17.8 | 2,566 | 3,066 | 19.5 | 2,180 | 2,450 | 12.4 |
| HI | 567 | 667 | 17.0 | 630 | 634 | 0.6 | 546 | 599 | 9.7 |
| ID | 564 | 741 | 31.4 | 543 | 587 | 8.1 | 607 | 761 | 25.4 |
| MT | 577 | 595 | 3.1 | 744 | 598 | -19.6 | 480 | 477 | -0.6 |
| NV | 2,815 | 3,205 | 13.9 | 2,403 | 3,000 | 24.8 | 2,945 | 3,150 | 7.0 |
| OR | 2,081 | 2,261 | 8.6 | 2,279 | 2,163 | -5.1 | 2,260 | 2,358 | 4.3 |
| WA,E | 659 | 681 | 3.3 | 681 | 648 | -4.8 | 569 | 602 | 5.8 |
| WA,W | 2,731 | 2,889 | 5.8 | 2,893 | 2,543 | -12.1 | 1,926 | 2,272 | 18.0 |
| GUAM | 22 | 32 | 45.5 | 34 | 18 | -47.1 | 33 | 47 | 42.4 |
| NMI | 44 | 44 | 0.0 | 40 | 37 | -7.5 | 62 | 69 | 11.3 |
| 10TH | 8,957 | 10,400 | 4.4 | 9,631 | 10,293 | 6.9 | 9,114 | 9,221 | 1.2 |
| CO | 2,963 | 3,170 | 7.0 | 2,779 | 3,233 | 16.3 | 2,284 | 2,221 | -2.8 |
| KS | 1,544 | 1,591 | 3.0 | 1,502 | 1,525 | 1.5 | 1,456 | 1,522 | 4.5 |
| NM | 1,222 | 1,236 | 1.1 | 1,282 | 1,301 | 1.5 | 1,353 | 1,288 | -4.8 |
| OK,N | 799 | 858 | 7.4 | 760 | 812 | 6.8 | 808 | 854 | 5.7 |
| OK,E | 497 | 503 | 1.2 | 471 | 507 | 7.6 | 410 | 406 | -1.0 |
| OK,W | 1,464 | 1,441 | -1.6 | 1,413 | 1,466 | 3.8 | 1,158 | 1,133 | -2.2 |
| UT | 1,190 | 1,311 | 10.2 | 1,095 | 1,147 | 4.7 | 1,354 | 1,518 | 12.1 |
| WY | 278 | 290 | 4.3 | 329 | 302 | -8.2 | 291 | 279 | -4.1 |
| 11TH | 28,937 | 30,069 | 3.9 | 28,458 | 30,550 | 7.4 | 31,990 | 31,509 | -1.5 |
| AL,N | 2,636 | 2,864 | 8.6 | 3,237 | 3,474 | 7.3 | 3,071 | 2,461 | -19.9 |
| AL,M | 1,093 | 1,228 | 12.4 | 1,144 | 1,112 | -2.8 | 943 | 1,059 | 12.3 |
| AL,S | 771 | 838 | 8.7 | 812 | 830 | 2.2 | 620 | 628 | 1.3 |
| FL,N | 1,773 | 1,632 | -8.0 | 1,545 | 1,744 | 12.9 | 1,504 | 1,392 | -7.4 |
| FL,M | 8,067 | 7,710 | -4.4 | 7,336 | 7,988 | 8.9 | 16,649 | 16,371 | -1.7 |
| FL,S | 8,046 | 9,239 | 14.8 | 8,042 | 9,145 | 13.7 | 4,376 | 4,470 | 2.1 |
| GA,N | 4,359 | 4,507 | 3.4 | 4,193 | 4,238 | 1.1 | 3,108 | 3,377 | 8.7 |
| GA,M | 1,215 | 1,093 | -10.0 | 1,240 | 1,136 | -8.4 | 1,025 | 982 | -4.2 |
| GA,S | 975 | 958 | -1.7 | 909 | 883 | -2.9 | 694 | 769 | 10.8 |

NOTE: Includes cases filed in previous years as consolidated cases that thereafter were severed into individual cases. Pending cases exclude asbestos cases transferred to PA,E under Order 875 of the Judicial Panel on Multidistrict Litigation.
[1] Percent change not computed when fewer than 10 cases reported for the previous period.
[2] Revised.

42